## Dr. A. P. O'Malley *v.* The Borough of Parsons, Appellant, and The Lehigh Valley Coal Co.

*Municipal care of streets—Unguarded embankment—Negligence.*

Whenever, owing to the existence of embankments or excavations alongside of a public street or highway, it would be reasonably prudent and necessary to erect and maintain railings or other suitable barriers to prevent accidents to passengers traveling along, coming into or leaving the public street or highway at customary and proper points, it becomes the duty of the proper municipal authorities to provide such guards or barriers ; and its neglect to do so will render it liable in damages to those, who, in the exercise of ordinary and reasonable care themselves, sustain injury in consequence of such neglect.

*Negligence—Care of streets—Question for jury.*

In an action against a borough for injuries caused by negligence in repairing streets, there was evidence tending to show that, between the top of a cut or steep embankment and the line of the street there was plenty of public ground over which defendant had exclusive control, on which a suitable barrier could have been erected ; that the street had recently been excavated and that plaintiff, while driving along the highway, was thrown from his carriage over the embankment; it was for the jury to determine what the condition of the street was, and what the borough could and should have done under the circumstances. There being evidence that, prior to the change, access to the street was safe ; that it was dark and that plaintiff did not know of the alterations and grading; the question of contributory negligence was for the jury.

Argued April 10, 1899. Appeal, No. 156, Jan. T., 1898, by Parsons borough, from judgment of C. P. Luzerne Co., Oct. T., 1895, No. 491, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injury. Before LYNCH, J.

The facts sufficiently appear in the opinion of the Supreme Court.

Defendants' points and the answers thereto among others were as follows :

7. The borough of Parsons had a right to grade Main street, as it did, along the mouth of the way running along what is known as the Middle road, and if, as the result of such grading, the approach to Main street was rendered dangerous to persons

using lawfully the way, it was the duty of the proprietor of the way, after knowledge of such grading, to reasonably guard against such danger. *Answer:* Refused. [6]

8. Under all the evidence in the case the verdict should be in favor of the borough of Parsons. *Answer:* Refused. [7]

Verdict and judgment for plaintiff for $2,500. Borough of Parsons appealed.

*Errors assigned* among others were (6, 7) refusal of defendants' points, reciting same.

*Paul J. Sherwood,* for appellant.—The authorities of a municipality are bound to do what is practicable and reasonable under all the circumstances to render highways safe. But having done this, they have fulfilled their duty and can be called upon to do no more. And when one alleges that they have failed in so doing, the burden is upon him to show it: Worrilow v. Upper Chichester Township, 149 Pa. 40; Kieffer v. Hummelstown Borough, 151 Pa. 304; Jackson Township v. Wagner, 127 Pa. 184.

But the authorities of a municipality are not bound to provide a safe way, or any way, by which its streets may be entered from private ways or private property: Goodin v. City of Des Moines, 55 Ia. 67; Haines v. Barclay Township, 181 Pa. 521.

A traveler's right to use a highway is always subordinate to the right of the authorities to repair it: Crescent Township v. Anderson, 114 Pa. 643.

Nor is it the duty of a municipality to keep its public ways open and in repair the full width, unless the demands of public travel require it. And, if it was the duty of a municipality in a given case to keep a street open the full width, a failure to do so would not be material unless it was a proximate cause of the injury complained of: Monongahela City v. Fischer, 111 Pa. 9; Pittsburg R. R. Co. v. Taylor, 104 Pa. 306; 2 Dillon on Mun. Corp. (4th ed.) sec. 1003, note 2.

And it is not liable for accidents occurring to those attempting to use the part not improved: Stafford v. Oskaloosa, 57 Ia. 748; Hodge v. Bennington, 43 Vt. 450.

We contend that Dr. O'Malley, having himself admitted previously passing by that point, was bound to know that bank was

there, because it was in plain sight to all who used their senses. He was therefore guilty of contributory negligence, and is not entitled to recover: Forks Township v. King, 84 Pa. 230; Haven v. Pittsburg, etc., Bridge Co., 151 Pa. 620.

In order to charge the municipality or local district with the duty of repair, or to make it liable for injuries for suffering the street or highway to be or remain defective, there must be an acceptance of the dedication, and that acceptance must be by the properly authorized local public authorities: 2 Dillon on Municipal Corporations (4th ed.), sec. 642; In re Alley in Pittsburg, 104 Pa. 622; Com. v. Moorehead, 118 Pa. 344.

This plaintiff should not recover: (1) He was not on a highway, when he received his injury. If he was within the proper limits of the highway at the moment of his fall, he had not entered upon it as a traveler, and did not take his fall because of any obstruction or defect of the highway. The municipality had neglected no duty which it owed this plaintiff; (2) he himself was guilty of contributory negligence in driving there. His own evidence, as well as the evidence of other witnesses, is to the effect that he had driven along Main street by the bank over which he fell, between the time of the cutting and his accident and could have seen it had he looked. It was there for two years, an open, patent, visible change, at the intersection of a private way with a public way, in a community with which he was acquainted, and in which he had practised his profession for more than a score of years.

*John McGahren*, with him *E. K. Little* and *P. A. O'Boyle*, for appellee.—Wherever, owing to the existence of embankments or excavations alongside of a public street or highway, it would be reasonably wise and necessary to erect and maintain railings or barriers to prevent accidents to passengers, it is the duty of a municipality to furnish them and it will be held liable for a failure to do so: Orme v. City of Richmond, 5 Am. & Eng. Corp. Cases, 605; Pittston v. Hart, 89 Pa. 389; Lower Macungie Twp. v. Merkhoffer, 71 Pa. 276; Newlin v. Davis, 77 Pa. 317; Hey v. Phila., 81 Pa. 44.

It is the duty of a municipality to fence off a private way leading into a public street where a cut or excavation exists at the point of intersection which renders the same dangerous to

public travel : Burnham v. City of Boston, 10 Allen, 290, and if the opening of such ways were not to be regarded as a license to the public to use them, it would seem, " as a trap to innocent passengers : " Washburn on Easements, *133.

It matters not whether the danger arises from an imperfection in the road itself, from an excavation in it outside the traveled route, from the existence of a declivity or a stream of water at the roadside, or from a railroad upon which locomotives and trains are accustomed to pass ; if the road is rendered a place of peril, the municipality is held to do whatever is reasonably practicable to avert the danger threatened: Plymouth Twp. v. Graver, 125 Pa. 25; Bauerle v. Phila., 184 Pa. 545.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 23, 1899 :

This action of trespass was brought by the plaintiff, a practising physician, to recover damages for injuries resulting from his being thrown from his carriage over an unguarded embankment into a highway. formerly called " Main road," but now known as " Main street," in the borough of Parsons.

Main street was originally laid out in 1818, and its width fixed by the court at fifty feet. After the incorporation of the borough defendant in 1876, Main street within its limits was accepted and since recognized as one of its streets. A large tract of land in the neighborhood, including a settlement on the south side of Main street, known as " Scranton Patch," was held by the Lehigh Valley Coal Company, as lessees, for mining purposes. In 1866 or 1867, three rows of houses were built on this tract, a short distance back from Main street, for the use of employees of the mines. The houses were built at an angle to Main street, the middle row extending, in the direction of the street, several houses beyond the first row. The third row was located back of the middle row and not contiguous to the street. The open spaces in front of the houses were used as a means of ingress and egress to and from the houses and Main street. Although evidence was introduced to prove acceptance by the borough defendant of these passageways as streets, the learned trial judge instructed the jury that the evidence was insufficient and that said passageways must be treated as private ways. The houses in the middle row, at the end next to Main street, were on a slight embankment which narrowed as it ap-

proached Main street, and ended in the same, at the end house. In its original condition the terrace in front of these houses next to Main street was a gradual slope, and the houses were approached from any point on Main street. Sometime prior to the accident, the borough authorities in improving Main street cut down the driveway thereof in front of the terrace, thus making the bank more abrupt. Immediately opposite the second house from the end next Main street—the house professionally visited by the plaintiff on the night of the accident—there was a depression in the embankment which, after Main street was improved, was used as a means of approach to the houses from said street. The evidence was conflicting as to the width of Main street after the grading was completed. Mr. Stahl, a surveyor called by the plaintiff, testified that it was forty-eight or forty-nine feet wide, but that it narrowed down to thirty-five feet at the point where the accident happened, only a short distance beyond. No fence or guard was placed along the embankment.

There is no controversy as to the way in which the accident happened. On the night of January 29, 1894, a cold, rainy night, plaintiff, with a pair of horses, a driver and covered phaeton, on his return from the borough of Parsons to Wilkes-Barre, turned off Main street by a private wagon way and stopped at the first house, thirty or forty feet from the street. After visiting his patient in that house, he resumed his seat and undertook to drive directly out to Main street. The accident is briefly described by plaintiff thus : " There was no difficulty in getting in there any time, night or day, and, of course, intending to go down where I had previously gone, not knowing there was any break in the road, or any precipice or bank, first thing I knew horse went over, and secondly, the carriage, and out we went. It was all done in an instant, and it was all over."

Plaintiff's leg was broken and he was otherwise severely injured.

Under all the evidence, the case was necessarily for the jury. If Main street was opened to its full width, the borough would have no right to go upon private land to erect guards or barriers. If, on the other hand, a considerable portion of ground dedicated to uses of a public way or street projected out into

Main street as opened, and if, in consequence of the cutting down that was done by the borough authorities, it was made dangerous to the traveling public, even approaching on private ways, the borough was negligent in not properly guarding the abrupt embankment or cut: Burnham v. City of Boston, 92 Mass. 290; Orme v. City of Richmond, 5 Am. & Eng. Corp. Cases, 605, and authorities there cited. In the former it was held: "If a traveled way, either public or private, over lots adjoining a public street in a city and leading into that street, for a long time before and after the existence of an excavation in the street, has been so much used by persons having occasion to pass as to become known as a common way for travel, and to make it reasonably necessary for the city in the exercise of due and proper care to provide a barrier for the purpose of preventing travelers, who pass over such way from the adjacent lots into the street and use due care, from falling into the excavation, and the city has unreasonably omitted to erect such barrier, it is guilty of negligence and liable for any injury happening to a traveler in the street by reason thereof." In Orme v. City of Richmond, supra, the municipal authorities lowered the grade of two streets, making a precipice of several feet at their intersection, at which point there was an old and much used pathway over an adjoining lot into those streets. The city had placed barriers at the ends of the streets, but nothing to warn passengers along the pathway. A traveler, ignorant of the precipice and without negligence on her part, at night, walked along the pathway down into the precipice, causing her great damage. In an action against the city, it was held that she had a right of action against the city and that the trial court erred in sustaining a demurrer to her claim.

In this class of cases, the underlying principle—recognized by approved text writers and many of our own cases as well—is that whenever, owing to the existence of embankments or excavations alongside of a public street or highway, it would be reasonably prudent and necessary to erect and maintain railings or other suitable barriers to prevent accidents to passengers traveling along, coming into or leaving the public street or highway at customary and proper points, it becomes the duty of the proper municipality to provide such guards or barriers; and its neglect to do so will render it liable in damages to those,

who, in the exercise of ordinary and reasonable care themselves, sustain injury in consequence of such neglect.

The evidence shows that between the top of the cut or steep bank, over which plaintiff was thrown, and the southerly line of the street there was plenty of public ground (from ten to fifteen feet wide) on which to put up railing or other suitable barriers. If the embankment projected in the manner described by plaintiff's witnesses, the borough had exclusive control over this ground, either to fence it off or to guard it in such manner as to make it reasonably safe. It was for the jury to determine what the condition of Main street at the point in question was, and what the borough could and should have done under the circumstances. In addition to the evidence presented on the trial, the jury were permitted to view the premises. In view of the testimony given in court, such personal view was worth more in aiding them to form an intelligent conclusion in the premises than all the witnesses that could be called. On the question of contributory negligence it would have been error for the learned trial judge to have taken the case from the jury. Plaintiff testified positively that he did not know of the alterations and grading done of the street, and the witnesses generally agree that, before the grading, etc., was done, it was entirely safe to drive over that part of the street—going in or leaving it at any point.

The case was submitted to the jury with well guarded instructions, which were quite as favorable to the borough as it had any right to expect. We find nothing in any of the assignments of error that requires special notice. They are all overruled, and the judgment is affirmed.