(59 App. Div. 404.)

### DENNIS v. VILLAGE OF ELMIRA HEIGHTS.

(Supreme Court, Appellate Division, Third Department. March 15, 1901.)

MUNICIPAL CORPORATION— PRIVATE WAYS—HIGHWAYS—NEGLIGENCE—DANGEROUS CROSSING—BARRIERS.

    Where a driveway, apparently, though not in fact, a public highway, is commonly used by the public, and a municipality, in the exercise of its right of improving an intersecting street, leaves the approach to the driveway in a dangerous condition, the duty of the municipality to the public requires its exercise of reasonable care to prevent accidents which might reasonably be anticipated to those traveling on the road with due care, and in ignorance of the danger, and renders it liable for injuries occasioned by failure to exercise such care.

    Kellogg, J., dissenting.

Appeal from trial term, Chemung county.

Action by Carrie M. Dennis against the village of Elmira Heights. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Judson A. Gibson, for appellant.

Rockwell & McCann, for respondent.

MERWIN, J. This action is brought to recover damages for personal injuries sustained by the plaintiff on the evening of July 3, 1897, by reason, as she claims, of the negligence of the defendant in not maintaining proper barriers against an excavation or embankment in Eighth or Hurlburt street, which was one of the public streets of the defendant. The defendant was incorporated on May 1, 1896. It included within its boundaries a quantity of land formerly owned and used by the county as a fair ground, and upon which there had been a race course. It had been conveyed in 1892 by the county to Compton & Hurlburt, by whom, after the removal of the buildings and fences, the ground was laid out into lots, and streets were indicated upon a map or plot that was recorded. One of those streets, running nearly east and west, was Eighth street, which seems to have been accepted by the village. Upon the east of this property was a street called "Grand Central Avenue," upon the south was McCann's Boulevard, and on the west was the Erie Railroad. In 1896, and for several years previous, there was a driveway passing from McCann's Boulevard northerly through the central portion of this property. It started from a point in the boulevard where had been the entrance to the fair ground; thence proceeded northerly to the race course; and then, following that, crossed the locality of Eighth street and proceeded northward. In 1896 the defendant, for the purpose, as it may be assumed, of improving Eighth street, established its grade along where it was intersected by the driveway referred to, and in accordance therewith the street was graded by the village authorities during that year. Eighth street was 60 feet wide, and the grading included 30 feet of the central portion. At the place where the driveway crossed Eighth street, this grading at the outer edge of the 30 feet upon either

side was to the depth of about $2\frac{1}{2}$ feet, leaving an abrupt descent from the surface of the street as it remained outside of the grading. This, as one witness says, was as abrupt as a gravel bank can be cut. There is evidence tending to show that the driveway was well defined, having a well-worn, beaten track for wagons and teams, and was frequently used by the public. The owners of the property in laying out and selling lots paid no attention to the driveway, but, practically, its course had not been interrupted by anything that was done until the grading of Eighth street. This operated to make a break with a sudden declivity to the depth of the grading. Some teams had passed over it, necessarily lessening to some extent the abruptness. In the fall of 1896 there was a barrier upon either side within the outer line of the street. It consisted of posts and boards. It does not appear who put up the barriers. The one on the south side of the street was removed in the spring of 1897 by some person unknown. The one upon the north side was thrown down by a traveler at about the same time, as it may be inferred. In the evening of July 3, 1897, the plaintiff, with her husband and daughter and a Mr. Wicker, left Elmira in a two-horse carriage. Wicker was driving. They proceeded northerly to the village of Elmira Heights, and then passed along Grand Central avenue northerly until, by reason of fireworks about a block ahead of them, which disturbed the team, they, at the suggestion of Mr. Dennis, turned westerly into what appeared to be one of the streets of the village. They passed along this until they came near to the driveway in question, when, seeing ahead of them a red signal light, they turned northerly into the driveway. It was then about 9 o'clock, but was light enough, as Mr. Dennis testifies, so that they could see the beaten path. They passed along this northerly, crossing one street, and then, as they came to the next one, which was Eighth street, the team and carriage went down the declivity on the south side of Eighth street, and the plaintiff was thrown out and injured. It may be inferred that the situation at the intersection of the driveway and Eighth street was not known to or observed by the parties in the carriage. There were then no barriers or anything to call the attention of travelers in the night to the situation. The court, in effect, held that there was no duty upon the defendant to furnish protection to those using the driveway. There is no point about contributory negligence.

This is not a case where one traveling along a highway has been injured by reason of some obstruction in it, or some dangerous situation in or so near it as to impose the duty of protection upon the municipality. Many of the cases, therefore, to which we are referred, do not apply. It is not claimed by the plaintiff that the driveway is a public street. The defendant claims that, if it is not a public highway, the plaintiff cannot, under her complaint, recover; that the negligence alleged is with reference to the condition of the driveway as a public highway, and not with reference to any neglect to maintain barriers on Eighth street. In the complaint it is alleged that Eighth street is one of the highways laid out and used by the defendant; that, prior to the laying out, grading, and excavat-

ing in that street, there had been a well-used, beaten highway cross-ing Eighth street at right angles; that in the laying out and estab-lishing Eighth street the defendant caused an excavation to· be made about three or more feet in depth at the place where this traveled highway crossed Eighth street, and this left there a sharp bank; that the highway which crossed Eighth street had been used for years, and its use was known to the defendant, but that the de-fendant negligently failed to place and maintain any barriers or notice to people driving upon the said highway that an excavation therein had been made, or that there was any danger in traveling over it; and that the accident to plaintiff occurred by reason of such negligence. The complaint is open to the construction that the pleader regarded the driveway as a public highway. The negli-gence, however, is not alleged to be the excavation or grading, but the failure to maintain barriers or give notice. From the case it appears that early in the trial it was conceded by the plaintiff that the driveway had never been laid out as a street, but that the public were permitted to travel there. No objection was then raised as to the pleadings. The basis of the charge against defendant was its negligence in not maintaining barriers at this particular locality. If, upon the facts shown, negligence is attributable, the allegations of the complaint are sufficient to authorize a recovery. At most, the plaintiff did not prove her case as strong as she expected to, and the question is whether she proved it strong enough to give her the right to go to the jury. The question, then, is whether the defendant owed any duty of protection to travelers coming along the driveway. The measure of duty upon a municipal corpora-tion in regard to people coming upon the street from a private way, or a road not recognized as a public highway, under the circum-stances shown in this case, has not, so far as the cases cited by counsel show, been determined in this state. In Carpenter v. City of Cohoes, 81 N. Y. 21, there was no charge of negligence upon the ground of failure to barricade the street. The situation had not been made dangerous by any act of the city. In Barr v. Village of Bainbridge, 42 App. Div. 628, 59 N. Y. Supp. 132, the injury oc-curred by reason of the horse of plaintiff taking fright at a pile of rubbish improperly allowed by the defendant to be within the limits of the highway, and the fact that the plaintiff reached the high-way from a cross road near by was not deemed to affect the ques-tion of defendant's liability. The question has been considered in other states. In Burnham v. City of Boston, 10 Allen, 290, the plain-tiff, coming upon the street from a traveled way, was injured by rea-son of an excavation in the street, which had been sufficiently bar-ricaded to protect travelers coming along the street, but not those coming in from the traveled way. It was held by the trial court that the right of the plaintiff to recover depended upon whether the traveled way upon which he entered the street had been dedicated to the public. This was held to be error, and the following rule was stated:

"If a traveled way, either public or private, over lots adjoining a public street in a city, and leading into that street, for a long time before and after

the existence of an excavation in the street has been so much used by persons having occasion to pass as to become known as a common way for travel, and to make it reasonably necessary for the city, in the exercise of due and proper care, to provide a barrier for the purpose of preventing travelers who pass over such way from the adjacent lots into the street, and use due care, from falling into the excavation, and the city have unreasonably omitted to erect such barrier, they are guilty of negligence, and are liable for an injury happening to a traveler in the street by reason thereof."

In O'Malley v. Borough of Parsons, 191 Pa. 612, 43 Atl. 384, the plaintiff, while entering upon the street at night from a private way, was injured by falling over an abrupt embankment, produced by the defendant in improving the street, and left unguarded. A verdict for the plaintiff was sustained, the court holding that: ·

"Whenever, owing to the existence of embankments or excavations alongside of a public street or highway, it would be reasonably prudent and necessary to erect and maintain railings or other suitable barriers to prevent accidents to passengers traveling along, coming into, or leaving the public street or highway at customary and proper points, it becomes the duty of the proper municipal authorities to provide such guards or barriers; and its neglect to do so will render it liable in damages to those who, in the exercise of ordinary and reasonable care themselves, sustain injury in consequence of such neglect."

In Orme v. City of Richmond, 79 Va. 86, the plaintiff was injured under circumstances similar to those in the O'Malley Case. The city was held to be liable; the court saying that the city was bound to use all necessary measures to guard against injury to persons coming upon its streets from private ways over adjoining lots, upon that portion of its streets which may be inclosed by barriers.

In City of Omaha v. Randolph, 30 Neb. 699, 46 N. W. 1013, the plaintiff, in driving into the city of Omaha after dark, followed a public way that had been used by the public for years, although never laid out as a road. The city was at the time grading one of the city streets, and had excavated the same perpendicularly to a depth of three feet at the intersection of the way, but placed no barriers or lights at or near the same. It being dark, the plaintiff was unable to see the condition of the street, and his team was precipitated into the excavation, and the plaintiff was injured. · It was held that the city was guilty of negligence. On the other hand, it was held in Goodin v. City of Des Moines, 55 Iowa, 67, 7 N. W. 411, that the city was not liable for a failure to guard its streets from approach by private ways at points where such approach has been made dangerous by recent excavations by the city. It was said that the city was not bound to provide a safe or any way by which the streets may be entered from private property; that the citizen or traveler must get into the public ways of a city as best he can.

In the present case there exists, as we must assume, a well-defined and well-traveled road, not a public highway, and therefore a private way, which the public had been accustomed to use for several years. This use was of such a character and extent that the village authorities must be presumed to have known it, or the jury had a right to so find. Such use prior to the grading was perfectly safe. When then the village, in the exercise of its undoubted right, in the process of

grading lowered the street so that the entrance to it from the drive-
way became dangerous, should it be said, as matter of law, that there
was no duty upon the defendant to guard the approach or make it
reasonably safe? Under the proof, the jury might have found that
the village authorities might have reasonably expected that the travel
would continue, and that, in the absence of barrier or notice, ac-
cidents like the one here involved would be likely to occur. The
rule applicable to cases like this may, I think, be fairly stated as
follows: If a road, apparently, though not in fact, a public high-
way, is commonly used by the public, and a municipality, in the
exercise of its right in improving an intersecting street, leaves the
approach from the road in a dangerous condition, the duty of the
municipality to the public requires the exercise by it of reasonable
care for the prevention of such accidents as might reasonably be
anticipated to happen to those traveling upon the road with due
care, and in ignorance of the danger. It follows that a case was
presented for the consideration of the jury, and that the nonsuit
should not have been granted.

Judgment and order reversed on the law and the facts, and new
trial granted; costs of appeal to the appellant to abide the event.
All concur, except KELLOGG, J., dissenting in an opinion.

KELLOGG, J. (dissenting). Eighth street is one of the public
streets over which defendant has control. The village was incor-
porated in 1896, and in the spring and summer of 1896 the defend-
ant graded this street, and at the place of the accident fixed the
street roadbed some $2\frac{1}{4}$ or $2\frac{1}{2}$ feet below the surface of the abutting
land. The land through which Eighth street was laid out was the
old fair ground, and was owned by Compton & Hurlburt. This
fair ground, up to 1893, had been inclosed by a fence; and within
the fair grounds was a race track, in form either circular or ellip-
tical, and this was also inclosed by a fence on each side. The track
had been worked and used for racing purposes up to 1893, and the
roadbed was smooth and hard. The fair ground outside the track
was level, smooth, and hard, "so that, by the tread of people and
vehicles, it was so hard that you could drive anywhere over that
portion of it. When the fences were taken down, it was a fairly
level piece of ground." This fence inclosing the fair ground, and
the fence inclosing the track, as well as the fair-ground buildings,
were removed in 1893 by the owners of the land. The entrance to
the fair ground before the removal of the fences was from McCann's
Boulevard, running east and west on the southerly side. On the
easterly side of the fair grounds was a much-used road, running
north and south, and called "Grand Central Avenue." On the west
and north there was no way of access or egress. After the re-
moval of the fences, and in 1893-94, Compton & Hurlburt laid out
this plot of ground into village lots. They laid out on the west
side an avenue running north and south in the general direction of
Grand Central avenue, on the east side, and another avenue run-
ning north and south, near the center, called "Lynwood Avenue."
This avenue was plowed and rolled, and made passable for vehicles

of all kinds. This avenue between Sixth and Ninth streets ran nearly parallel with the old race track, and about 100 feet distant therefrom. They also laid out cross streets running west from and into Grand Central avenue. These cross streets were known by number, were about 300 feet apart, and were all plowed, with a plowed gutter on each side. Streets numbered Sixth, Seventh, and Eighth ran across and cut through the old race track. In the plan of streets the old race track was wholly disregarded, and the track was appropriated for building lots. At the point where Eighth street crossed the old race track a house was built partly in the old track, and fronting on Eighth street. Such was the condition of the plot and the streets thereon when the village was incorporated, in 1896, and the village took over the control of these new avenues and streets. After the fences were taken down in 1893, it appears that people not infrequently passed with teams in all directions over this plot of land, and more often than at other places drove out and along the old race track, disregarding the cross streets and avenues. It also appears that those who so used the plot and race track knew that no public driveway or private drive was intended for use, other than the cross streets and avenues so laid out, and made obvious to all on the land itself. This continued for two or three years, and until the spring or summer of 1896, when the village authorities graded Eighth street, and lowered the roadbed where the old race track was crossed, and for a distance beyond. At the time the street was so graded, barriers were put up across the old race track on each side of Eighth street, and crossing by way of the race track was interrupted. Afterwards such teams as were driven over that track, for the most part, came to Eighth street, and turned back or sought other access to the street. In June, 1897, one Carmody drove a team across Eighth street at this place, and tore away the barriers, which were not thereafter replaced. About a month thereafter,—July 3, 1897,—the plaintiff, with others, driving a team of horses, and with a two-seated wagon, in the evening, turned out of Grand Central avenue into Sixth street, and, proceeding a short distance on that street, again turned out of the street northerly, and proceeded towards Eighth street. Before reaching Eighth street they crossed Seventh street, and came into the old race track, which had its original appearance between Seventh and Eighth streets, and, attempting to cross Eighth street, went down the 2½-foot embankment, and plaintiff was injured.

Had Compton & Hurlburt, as owners of the plot and streets, not turned the control of the streets over to the village, and had themselves created this grade and excavation, tested by the rule as laid down in Beck v. Carter, 68 N. Y. 283, 23 Am. Rep. 175, they would not have been liable to the plaintiff for any injury sustained and happening under the facts appearing in this record. That, I think, is clear. There was no invitation here, either express or implied, to any person to come upon their lands, or to drive along the old race track. On the contrary, the laying out of streets across the old track, and making gutters on each side of the streets, with only about 300 feet of space between such cross streets,

and providing an avenue running north and south near the old race track, with safe connections with the cross streets, was a plain declaration to all parties that the old race track was not to be considered or treated as a roadway for travelers. In the Beck Case, supra, Andrews, J., says:

"If, however, he gives but a bare license or permission to cross his premises, the licensee takes the risk of accidents in using the premises in the condition in which they are."

The obligation resting upon an individual is not less, but greater, than that resting upon a public governing body. With the individual it is, in a sense, a moral obligation, expanded in certain cases into a legal obligation; but the duties of a municipality do not rest upon moral obligation, but are purely statutory, either express or implied. The municipality exercises statutory powers and discharges statutory duties. As respects the public ways over which it has control, its duty relates to the convenience and safety of travelers thereon, and whatever is needful for such safety must be done. The erection of barriers to prevent travelers upon the public ways from falling into dangerous pits or places is a duty well understood, but what duty does the municipality owe to persons who are not travelers? To would-be travelers? Those seeking access to the public ways? It is too plain to need discussion, I think, that every one has a right, with the consent of the abutting owner, to obtain access to the public way at any point that he may choose, provided only that the safety or convenience of travelers on the public way is not diminished. If this proposition requires some authority for its ready acceptance in its broadest sense, it may be found expressed in Burnham v. City of Boston, 10 Allen, 290:

"Nor is there any positive rule of law which requires a person to enter on a highway in any particular manner or at any fixed place, or which prescribes the exact mode in which he shall travel upon it. * * * It is immaterial whether travelers entered the street and were lawfully upon it by passing over private or public ways."

If this is an absolute right of the abutting owner, and of every person who has the permission of the abutting owner, how can the right be destroyed by the municipality by erecting barriers, except when the safety of travelers on the public ways requires it? It is no concern of the municipality if an individual seeks access to the street at any dangerous place, for the individual assumes the risk. There is no duty, statutory or moral, which should move the municipal body to prevent it. Nor do I think it has the power to prevent it, except in the case stated,—when the safety or convenience of travelers on the street requires it. If the right of access exists in the abutting owner, and in those whom he may permit to cross his land, as we have stated, any barrier erected by the municipality to prevent such access to the street may be removed by any person whose way is impeded by it. And the power to maintain such a barrier is so put to the test. I do not understand that it is claimed that it is the duty of the municipality to create a safe approach to the street at these places where individuals seek the street laterally, and not at the places provided, to wit, the intersection of public

streets. Such a claim, if made, would or might necessitate safe approaches along the entire sides of public ways, where the safety or convenience of travelers on the public ways would permit. This would be clear recognition of a paternal character in the governing body, embracing not only the traveling public, but all those seeking easy transfer into the character of travelers. So far the courts of this state have not gone, beyond holding that the entire duty of a town, village, or city respecting streets relates solely to the safety of the travelers thereon. No duty has been declared, expressly or by intimation, as owing by a town, village, or city to those not possessing the character of travelers. The village law confers the power to raise and lower the grade of streets. This power is usually and properly exercised without regard to private entrances, paths, or alleys. These private entrances, paths, and alleys, if to be thereafter used as approaches, must be made useful by the private owners. Any person seeking entrance thereby to the public way assumes the risk, but the municipality has no power to maintain other hindrance by way of a barrier placed solely to prevent access to the public way at those places; nor has the governing body any right to use the public money to make safe a private approach, or facilitate travel over it. This right to raise or lower the grade of public ways, without regard to the abutting owner or the owner of private approaches, is a right which was paid for when the easement was taken by the municipality. In Requa v. City of Rochester, 45 N. Y. 129, 6 Am. Rep. 52, the city was held liable for cutting down the grade of a street and leaving an entrance by an alley in a dangerous condition; but the decision was placed expressly on the ground that the alley, by dedication and over 20 years' user, and by the terms of the city charter, became a public alley, over which the city had jurisdiction, and the city "was bound to shape any improvement of Clark street, so that people could continue to use the alley. * * * The alley being under its care, the duty of remedying the immediate consequence of its act [grading down Clark street] was incumbent upon it." The decision is not placed upon the ground that the city was bound to erect a barrier, or take some preventive means touching access to the alley, or through the alley to the street, as it might well have been if appellant's contention is to be accepted by the courts of this state as sound. The discussions and decisions in the so-called "Elevated Railroad Cases" have more clearly defined the rights of the abutting owners upon public ways, and have more clearly defined the line between the rights and powers of the municipality, on the one hand, and the rights of the abutters which are subordinate thereto. It is now well understood that the abutting owner has rights which the municipality is bound to respect, and that the municipality has rights which it has power to enforce without regard to the inconvenience of the abutting owner, and with exclusive regard to the convenience of the travelers upon the public ways, and to the uses to which these ways may be properly devoted. The abutter's right of access along his entire premises is conceded; but this right can only be enjoyed at the expense and risk of the abutter, and enforced only in case of nonin-

terference with the superior rights of the municipality. I think it safe to say that a careful examination of all the decisions in this state will not only force the conviction that the contention of the appellant is wholly unsupported, but that the underlying principle which is the sole foundation of that contention is ignored or impliedly repudiated; that all the decisions in this state on the subject limit the duty of towns, villages, and cities touching the streets and public ways to the convenience and safety of the travelers thereon, and that without regard to the convenience of access of abutters or of by ways, private ways, alleys, or paths leading into or across such public ways, and without regard to the convenience or safety of those habitually or occasionally traveling thereon; that the municipal duty in this respect is limited, and its limitations are clearly seen, and can be expressed in language to be undertsood, and is a guide of value in trial courts; that no feature of the duty is grounded upon or springs out of any undefined, elastic, or illusive moral obligation, but is wholly statutory. It requires no serious consideration to see into what expansive and unlimited field of duty and liability the appellant's contention leads. It shall be held that towns, villages, and cities owe a protective duty to those seeking access to the public ways at other places than those provided and controlled by these municipalities, the duty must necessarily extend to every point along each side of every street or public way; for, as we have seen, there can be no limit to such access, except such as may be forbidden by the convenience and safety of travelers upon the public ways, and this duty must run to each individual who seeks to exercise his right of entrance. This duty might properly be said by any jury not to have been discharged unless the municipality, in lowering or raising the grade of a public way, had made careful examination for footprints of men or domestic animals in the adjoining soil, and for wheel tracks or other evidences that some stray individual or domestic animal had once or more times crossed in that vicinity. Indeed, such failure to find evidence might not, in the minds of jurors, excuse; and it might properly be held that the duty required a reasonable apprehension that in the future some person might lawfully approach the public way where the grade had been changed, and, in ignorance of the change, fall into the street. It would be unreasonable to draw the line at known paths, private ways, and alleys; for, if it is a duty which the town, village, or city owes, it is a duty grounded in the statute of solicitude for the safety of all persons exercising their right of access, whether they exercise it so often or in such numbers as to make a path to be seen or otherwise. If the duty is to have limitations, these must be disclosed by the court, and it is not clear where the line should be drawn. If there is a duty imposed in this regard upon towns, villages, and cities, I apprehend it is susceptible of no limitations, and in every case must be left, without instruction or guide, to a jury to say how much the municipality should pay. The fact of the accident would prove the negligence.

Some cases have been cited to us to sustain the contention of the plaintiff. The case of Burnham v. City of Boston, 10 Allen, 290, is

much relied upon. That case, however, it will be seen on examina-
tion, is not in point. The facts there were so essentially different
from the facts here that it is not authority. That case was decided
by a divided court. The dangerous excavation was not encountered.
by one coming into the street. The way leading into the street
was level and smooth, and much traveled. After being safely upon
the roadbed of the street, and moving across it, the plaintiff was
thrown over an embankment or cut which had been made by a rail-
road crossing the street. The barrier had not been placed near
the brink of the embankment or cut, but too far away, and did
not protect those using the street to cross at this point. The de-
fect there was in the street and on its roadbed, and the court
held that the city had failed in its duty to protect travelers upon
the street. With this holding the appellant can find no argument
for the contention here. The court also held that plaintiff had be-
come a traveler when he reached the traveled way of the street,
whether his purpose was to travel along or across the street, and
was entitled to protection. Such is not the case we are consider-
ing. Whatever else was stated in the opinion was obiter, and
might not have been stated, were it needful for a decision. The
cases of O'Malley v. Borough of Parsons, 191 Pa. 612, 43 Atl. 384,
and Orme v. City of Richmond, 79 Va. 86, support in a measure
the appellant's contention. Neither of these cases, however, gives
any reason for such holding, and cites no authority therefor, ex-
cept the Burnham Case, supra; and, as we have seen, that case
does not apply. We have the right to infer that these decisions
were not made upon any reasoned principle, but were induced by a
misreading of the Burnham Case. City of Omaha v. Randolph, 30
Neb. 699, 46 N. W. 1013, is also a partial support for the plaintiff's
claim. The court here was careful to say, however, that, had the
road which led into the public street been a private way, the city
would not have been liable. It says:

"The testimony clearly shows that the road traveled by Randolph was not
a private way, but a highway that had been generally used by the public for
more than ten years."

It is not at all certain that, upon the facts in this case,—of oc-
casional user for some two years of a way known not to be a high-
way,—the court would have held the defendant liable.

Diligent search in the reports of the several states fails to disclose
any decisions, other than the foregoing, tending to support the doc-
trine contended for by the appellant. On the other hand, Good-
in v. City of Des Moines, 55 Iowa, 67, 7 N. W. 411, and McCarthy
v. Corporation of Village of Oshawa, 19 U. C. Q. B. 245, hold the con-
trary doctrine. In the Goodin Case, supra, the municipality cut
down the grade of a street where it crossed a much-used pathway
leading to a church, and left the entrance to the street in a danger-
ous condition, without barriers or other notification of danger. The
plaintiff, ignorant of such changed condition of the street, in pass-
ing along the pathway in the nighttime fell and was injured. The
court held that there was no duty imposed upon the city which it
had neglected, and the city owed no duty to those passing over the

pathway. In the McCarthy Case, supra, a ditch ran at the side of the street in front of plaintiff's premises, and had so washed away the ground as to be at the top six feet wide, and prevented safe access to the premises of plaintiff. In crossing upon a plank placed by plaintiff, he fell and was injured. The court held the village not liable, and said:

"The public crossing or bridge over the side ditch at the intersection of streets is all that we see the corporations of cities, towns, and villages do in fact provide, * * * and we do not think that the duty could be reasonably extended further."

In Smith v. Inhabitants of Wendell, 7 Cush. 498, a town was held not liable for an injury resulting to a traveler in passing from a public highway to a railway station through a road opened by the railroad company for that purpose, on account of a block of stone lying within the limits of the highway as located, and obstructing the entrance to the road to the station, if such stone did not obstruct the roadbed of the highway. In Dougherty v. Trustees, 159 N. Y. 154, 53 N. E. 799, it was held that the village was not liable for an injury to one seeking access to the public street through a private way, by reason of a stone placed within the limits of such street and obstructing such private way, though unknown to and unseen by the person injured, when such stone served to protect a tree or grassplat within the street.

These cases, and many other like cases which might be cited, point to the conclusion that the governing body of a town, village, or city owes no duty of protection to those seeking access to or egress from the public ways, and also that such access and egress cannot be interrupted or obstructed by such governing body unless the duty of such town, village, or city respecting the safety of travelers upon the public ways, and the protection of the public uses of such public ways, require it. I do not think the facts presented by this appeal warrant the finding by a jury that defendant had failed in the discharge of any duty which the statute either expressly or by implication imposed upon the defendant, and the nonsuit was therefore proper.