## City of Chicago v. John McKenna.

### Gen. No. 11,316.

1. NEGLIGENCE—*when municipality not guilty of.* A city is not guilty of negligence in failing to provide railings upon each side of a temporary walk erected by railway contractors, engaged in repairing a viaduct on a permit from the city, at the request and for the use of private persons and their customers, where access to such temporary walk was guarded by barricades and the danger made apparent by the use of red lights; nor is the case different even if it were conceded (the evidence being conflicting) that access to such sidewalk was not guarded by barricades, where the person injured by falling from such temporary walk to the street below, entered thereon from the premises of the persons for whose use it had been so provided.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1903. Reversed. Opinion filed May 26, 1904. Rehearing denied June 9, 1904.

JOHN F. SMULSKI, City Attorney, and WILLIAM ROTHMANN, for appellant; D. H. WAMSLEY and MORITZ ROSENTHAL, of counsel.

JAMES G. CONDON, for appellee; A. W. BROWNE, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

March 18, 1901, appellee was injured by falling through an open space in the sidewalk, part of a viaduct at 12th street, between Wentworth avenue and Canal street, Chicago, which was being repaired by a contractor of the Chicago Terminal Transfer R. R. Co., by authority of the city of Chicago. He brought suit for his injuries against the city of Chicago, a trial of which, before the court and a jury, resulted in a verdict and judgment thereon in favor of appellee for $25,000, from which the city has appealed.

Numerous questions are raised and discussed by counsel, all of which we have considered, but in view of the conclusion reached it seems necessary to discuss only one question, viz., whether there was evidence to go to the jury on the question of appellant's negligence.

City of Chicago v. McKenna.

It appears from the evidence, in substance, that the repairs of the viaduct where the injury happened had been in progress for some time prior to March 15, 1901, just how long is not clear from the evidence, but by that date it had sufficiently progressed so that the roadway for teams over the viaduct, which was about thirty-two feet in width, and the south sidewalk, had been completed and opened to travel, though on the morning of March 18, 1901, a portion of the north sidewalk extending from the Chicago river on the east to a point about thirty feet west of the place of accident, had been torn up in the regular progress of the work, for a space of about one hundred and fifty feet. Access to this portion of the north sidewalk was cut off by barricades, one on the east near the Chicago river, one on the west toward Canal street, and another on the south along the northerly line of the roadway for teams. The evidence in regard to this latter barricade is not clear and is somewhat conflicting, but we think it shows that this barricade was four to five feet in height and effectually prevented any access to the north sidewalk, except by climbing over the same. The barricades, both east and west of the place of the accident, prevented any access from those directions. The surface of this sidewalk, before it was torn up for the repairs, as well as the roadway to the south, was from eighteen to twenty-five feet above the ground below, which was traversed by numerous railway tracks, and there was also below and near the viaduct a coal yard belonging to Baker Bros., and a railway roundhouse of the Baltimore & Ohio Railroad Company about one hundred and fifty feet distant from the place of the accident. On the north side of the sidewalk and about on a level with it, stood a small frame building supported by posts, which was occupied as a coal office by Baker Bros., the main door of which opened to the south onto the sidewalk. From this coal office there extended, both east and west from it, an iron fence along the north edge of the sidewalk, which effectually cut off all access to the viaduct on the north at any point near the place of accident except through the said door leading from

the office of Baker Bros. toward the south. On the morning of March 18, when the sidewalk in front of Baker Bros.' office was torn up, the contractor who was doing the work of repairing the viaduct, at the request of one of the Baker Brothers, caused to be placed four or five planks side by side, extending from the door of the coal office to the team roadway on the south, so that Baker Bros. and their customers could, by climbing over the barricade at the south edge of the sidewalk, have access to the street from the office and from the street to the office. This temporary walk was about four feet in width, but there were no barriers or railings of any kind on either side of it. Both east and west of this temporary walk there was an open space to the ground below the whole width of the space occupied by the north sidewalk, with the exception of the stringers from which the planks had been taken. During the night, all the while the work was in progress, a red light was placed at the east end of the viaduct near the Chicago river, and at the west near Canal street, where it was barricaded, as a warning of danger. There was also an electric light suspended over the viaduct some thirty or forty feet west of Baker Bros.' coal office, though it appears that this light was not at all times burning during the night. The evidence shows that it was dark in front of Baker Bros.' coal office at the time of the accident, which was about twelve o'clock of the night of March 18.

Appellee was a locomotive engineer for the Baltimore & Ohio Railroad Company, and had been in its employ for some years prior to his injury, and had been in the habit for some time prior to March 18, 1901, in going to and returning from his work, of passing down and coming up a stairway which extended from the rear door of Baker Bros.' coal office to the ground below. He says in his evidence that he went through that way generally every night— some six or eight times a week. This stairway was connected with the coal office by a side door on the northeast side of the building—was erected by Baker Bros. for their own convenience and that of their customers, was not a

public stairway, though it appears from the evidence that for at least two or three years prior to March 18, 1901, it had been used daily by many people going from the viaduct to the railways and coal yards below the viaduct, and in coming from the railways or coal yards below to the viaduct above, presumably with the assent of Baker Bros. To use this stairway as a means of access to the street from below or *vice versa*, it was necessary to pass through this office of Baker Bros., and two doors thereto.   No business was done in the office of Baker Bros. after seven o'clock P. M., and there is evidence that but very few persons were in the habit of using this stairway as a means of access to the street or egress from it during the night time.   It does not appear that appellee had any business whatever with Baker Bros., nor does it appear, except as it may be inferred from what has been stated; that he passed through their office and used this stairway by their consent.   The last time that appellee passed through the office before his injury, Friday night, March 15, the north sidewalk had not been torn up.   Appellee, between 11:30 and 12 o'clock the night of March 18, as he passed out of the front door of Baker Bros.' coal office, having come into it from below by means of said stairway, started along said temporary walk, stepped off it, and fell toward the east through the open space where the sidewalk had been torn up, and received the injuries for which he has sued.

The only possible ground of negligence on the part of the city authorities, in so far as such negligence could be said to have been the proximate cause of appellee's injuries, is its failure to maintain on each side of the temporary walk from the door of the coal office to the team roadway a railing or barricade, so as to prevent any one passing along the temporary sidewalk from stepping off and falling through the open space to the ground.

The city, through the railway contractor, having carefully guarded all the usual and ordinary means of access to the place where the sidewalk was torn up by means of the barricades both on the east and west, as well as by red

lights and by the barricade between the walk and the team roadway, had, in our opinion, performed its duty to the travelling public, including appellee, and was guilty of no negligence in failing to erect a railing or barricade on each side of the temporary walk. This walk was placed there at the request of and only for the convenience of Baker Bros. and their customers. For an injury to one of them a different question from the one at bar would be presented, since appellee cannot claim an undertaking on the part of the city to provide for his safety in passing over the temporary walk, as it was not placed there on his account or for his convenience or accommodation. The fact that the evidence is somewhat conflicting, and it is not entirely clear that between the north sidewalk and team roadway there was a barricade, is not important, because, if it be admitted there was no barricade at this point, negligence of appellant in that regard did not cause appellee's injury. He came upon the temporary walk from Baker Bros.' office, and not from the team roadway.

No case similar in its facts to this has been cited by either counsel, nor have we, in the time at our disposal, been able to find a like case. Cases of injuries caused outside the street line, and by reason of a failure to provide danger signals in the street, and where the street was not used in the usual and ordinary manner by the person injured, are cited and relied upon by appellant. Strictly, they are not authority on the question here presented, but in some of them the courts lay down general principles which seem to us applicable. One of such cases is Mulvane v. Topeka, 45 Kan. 45, in which a person while driving on private property near an excavation in a public street, (of which he was wholly ignorant,) and because of the absence of danger signals, his carriage fell over an embankment into the excavation, and he was injured. The court held that the city was not " liable for a failure to guard its streets from approach at points where such approach was dangerous," and say : " There was no obligation resting upon the city to provide a way over private property to

its public streets and avenues, and the fact that the ground over which the plaintiff passed had been used by the public for a number of years would not cast upon the city any duty to erect barriers, or place danger signals upon such ground, unless the city had full and complete control over the same, as a part of the public streets of the city." So in this case, the stairway being upon private property, erected for private purposes by the owners of such property, we are of opinion the city was under no obligation to place safeguards for the protection of appellee along the temporary walk, which was placed for the convenience of and at the request of Baker Bros., for themselves and their customers. The city performed its whole duty to appellee when it placed and maintained the barricades to which we have referred.

Another of such cases is Harding v. City of St. Joseph, 92 Mo. App. 143-9, where the plaintiff was injured after coming from a vacant lot and crossing a space left for a sidewalk, and was proceeding thence into the street proper and fell into a ditch between said sidewalk space and the street. It was claimed that the city was negligent in not maintaining a light at the place in question, and because the street was in an unsafe and dangerous condition because of the ditch. The Court of Appeals held, all the judges concurring, that there was no liability of the city because of the contributory negligence of the plaintiff in leaving the street or sidewalk space at an unusual place, she having no previous knowledge of the conditions in that locality and the night being dark. The court, among other things, say: "It is only the duty of a municipality to keep its streets in a reasonably safe condition for the use of the public who travel over them in the usual and ordinary manner." So here the city had a perfect right and it was its duty to repair the viaduct, and it did its whole duty when it protected all the usual and ordinary approaches to the place where the sidewalk was torn up, by sufficient barricades, and it owed no duty to appellee to protect him from danger when he approached the sidewalk from a private way in the night time, especially since that

means of approach at that time could not reasonably have been anticipated, and there was no actual notice to the city that the public was in the habit of using this means of access to the street. The appellee, in making use of this stairway as a means of access to the viaduct, did so at his peril. Other like cases are Mayor, etc., v. Hyde, 11 So. Rep. (Miss.) 108; Ivester v. City of Atlanta, 42 S. E. Rep. (Ga.) 220; Goodin v. City of Des Moines, 55 Iowa, 67; Calhoun v. City of Milan, 64 Mo. App. 398.

It is said by appellee's counsel that the city had direct notice that the stairway was used, and that appellee was exposed to danger of falling from the temporary walk, because it appears from the evidence that one Walsh, a police officer, was in the coal office at the time appellee passed through it. The evidence fails to show how Walsh came into the office or that he knew of the condition of the temporary walk. If Walsh knew of the condition of the walk, he may have assumed that appellee also knew of it, and would avoid any danger to which he was exposed. Moreover, there being no duty of the city to appellee to provide barriers along the temporary walk, that duty could not arise because of any knowledge of the policeman as to its conditions.

It is claimed that the case of City of Chicago v. Early, 104 Ill. App. 398, is authority for holding the city liable here. We have examined the case, and cannot agree with appellee's counsel. The sidewalk in that case was defective and was used by the appellee in the usual and ordinary way, and was not being repaired.

Especial reliance is placed by appellee's counsel upon the case of City of Chicago v. Baker, 95 Ill. App. 413, affirmed 195 Ill. 54, but we think that case differs so materially from the one at bar as not to be an authority. The negligence on which the recovery in that case was sustained was in failing to place a railing or barrier along the edge of a sidewalk, though on private property, so as to protect persons passing along the street sidewalk from falling into an open space in dangerous proximity to the private walk. There

was no visible line of demarcation between the sidewalk on the street and the sidewalk on the private property. Both were on the same level and formed apparently one sidewalk. These facts we think clearly distinguish it from the case at bar.

It is well settled and needs no citation of authority, that the duty of the city toward persons using its sidewalks in the usual and ordinary way, is to exercise reasonable care to protect them from injury from defects or dangers therein. We think that care on the part of the city of Chicago is clearly established by the evidence in this case, and that for the unfortunate results to appellee the city is not responsible, because it performed toward him all its duty under the law.

The judgment of the Circuit Court is accordingly reversed.

*Reversed.*