SHUPTRINE *et al. v.* HERRON.

(In Banc. Suggestion of Error Overruled June 6, 1938.)

[180 So. 620. No. 33107.]

Brewer & Montgomery and Chas A. Sisson, all of Clarksdale, for appellant, J. A. Pigford, Jr.

Herbert Holmes, of Senatobia, and Herbert M. Fant, of Sardis, for appellant, C. F. Shuptrine.

**Jamie L. Whitten,** of Charleston, for appellee.

James McClure, of Sardis, for appellee.

324

Argued orally by **Herbert Holmes** and **Fred Mont-gomery**, for appellant, and by **James McClure**, for appel-lee.

**Griffith, J.**, delivered the opinion of the court.

Appellee, at the time of the injury herein complained of, was a resident of the village of Courtland, her residence being immediately on the east side of state highway No. 51. Appellants were contractors in the permanent construction of said state highway. Under their contract with the State Highway Department and in accord with the specifications therein contained, the contractors were required to lower the grade of the highway in front of the residence of appellee, so that at a point 13 feet from her front yard steps a cut was made about 5 feet deep. The contract was performed in this respect precisely according to said specifications.

There was only one other residence in the village on the east side of the highway, and that was to the northward of that of appellee, but on that side also, and to the northward of appellee's residence there was the village schoolhouse. The main portion of the village was on the other or west side of the highway. There was a residence on the west side, almost opposite the residence of appellee but somewhat to the northward. It had been the custom, particularly in going from the village to the schoolhouse, that the children and others, or some of them, would proceed to a point on the west side of the highway, opposite appellee's residence, then eastwardly across the gravelled highway 51, as then situated, to a point directly or almost directly in front of appellee's residence, and thence to the schoolhouse; and those going from the schoolhouse to the village would follow the same course in the reverse. This was the course that appellee would take in going to the village.

At a point opposite the residence of appellee, the new highway was constructed so as to run straight north and south, and this required the new highway going north to depart at that point to the westward of the old highway, inasmuch as the old highway curved to the

eastward there. As the contractors cut down the grade for the new highway, they at the same time cut down the grade in the old highway so as to induct it into the new highway at the point of divergence on the same grade as that of the new highway; and this point of juncture was at or near the northeast corner of appellee's yard. This made it so that those going along the old highway from or to the schoolhouse would and did follow the old highway as regraded and thence into the new highway as graded and would and did no longer go to a point directly opposite appellee's residence; and it left the rim of the cut of the new highway 13 feet from and west of, the front yard steps of appellee's residence, the cut at that point being about 5 feet deep, as already mentioned. Further of what was done will be later mentioned.

About a month or six weeks after all this had been done, appellee was awakened at night by an alarm of fire, the fire being in the residence of a near relative, and in her excitement, and as she says in a moment of forgetfulness of the change that had been made, although she knew fully of all that had been done, appellee ran out of her yard and into the cut and was severely injured. She sued the contractors and recovered judgment on the theory that the contractors should have erected a barrier at the cut in front of her residence, in view of the previous custom to cross the highway on foot at or about that point.

Appellants contend that, inasmuch as they did the work for the State Highway Department and in strict accordance with the specifications prescribed by the state, they are entitled to the same immunity which belongs to the state itself. Without pausing to consider that question, or the other questions raised, we will proceed at once as if the work was being done for a railroad company or for a municipal corporation, this being the most favorable view that could be taken in appellee's behalf.

There are hundreds of thousands of miles of railroads and other public highways in this country which pass through hills and where deep cuts below the original surface of. the ground have been necessary. There are hundreds of thousands of such cuts in this state and thousands within municipalities. It has never been supposed that railroads or others who construct or maintain public highways are under any duty to fence or barricade these cuts so as to prevent persons or animals from falling therein from abutting property. No such duty exists at common law and no statute in this state requires it. The rule is so stated in 2 Beach, Pub. Corp. section 1228: ''It is not the duty of a city to provide means of access from private property to its streets, nor is it liable for failure to guard its streets from approach at points where such approach is dangerous. A city is under no legal obligation to provide danger signals along an excavation in a public street as to one travelling outside the street, or except at the crossings or intersection of such street by other streets or highways.'' Municipalities are not required at the expense of taxpayers to provide special means of approach or access to its streets opposite the residence of every abutting property owner. Such individual entrances must be provided and constructed by the owner himself. The leading case on this particular subject is Metcalf v. Boston, 158 Mass. 284, 285, 33 N. E. 586 .

Where, however, a railroad or a municipality or other responsible party makes a cut across another highway, or across a well-defined and generally used roadway, whether public or private, or even across a pathway so commonly used and so well defined as to amount to a roadway, the corporation or person who makes the cut (1) shall display lights or erect barriers, or else (2) shall make a safe entrance from the intersected road or pathway, at the point of intersection or so near thereto or in such manner as that those who formerly used the

intersected or interrupted roadway or well-defined path or any other traveler, will readily see and unmistakably know that they are to use the new way instead of the old. And the same rule applies to an abandoned public highway, when it is left in such condition as would likely mislead persons of ordinary prudence into supposing that it is still open to use. De Long v. Oklahoma City, 47 Okl. 398, 148 P. 701, L. R. A. 1915E, 597; O'Malley v. Parsons, 191 Pa. 612, 43 A. 384, 71 Am. St. Rep. 778; City of Omaha v. Randolph, 30 Neb. 699, 46 N. W. 1013; Burnham v. Boston, 10 Allen 290, 295, 92 Mass. 290, 295; Dennis v. Elmira Heights, 59 App. Div. 404, 70 N. Y. S. 312; Mulvane v. South Topeka, 45 Kan. 45, 25 P. 217, 23 Am. St. Rep. 706; Elliott v. Mason, 76 N. H. 229, 81 A. 701, 37 L. R. A., (N. S.), 357; Clark v. Richmond, 83 Va 355, 5 S. E. 369, 5 Am. St. Rep. 281; Griffin v. Chillicothe, 311 Mo. 648, 279 S. W. 84, 42 A. L. R. 1273; Orme v. Richmond, 79 Va. 86. Compare Young v. District of Columbia, 3 MacArthur 137, 10 D. C. 137; City of McCook v. Parsons, 77 Neb. 132, 108 N. W. 167; Goodin v. Des Moines, 55 Iowa 67, 7 N. W. 411; City of Chicago v. McKenna, 114 Ill. App. 270; Calhoun v. Milan, 64 Mo. App. 398; Kirkham v. Kansas City, 89 Kan. 651, 132 P. 160; Morgan v. Hallowell, 57 Me. 375; and see particularly Compton v. Revere, 179 Mass. 413, 60 N. E 931; Ivester v. Atlanta, 115 Ga. 853, 42 S. E. 220; also 7 McQuillan on Municipal Corporations, section 2990, pp. 213, 214, and 43 C. J., section 1818, p. 1039, and notes to Daniels v. County Court, 69 W. Va. 676, 72 S. E. 782 37 L. R. A. (N. S.), 1158.

Inasmuch, therefore, as appellants owed no duty to appellee as an abutting property owner, and their only duty, if any, was to her as a member of the traveling public, that is to say, as a traveler, and since this latter duty, if any, must have its foundation in the former use of the old pathway, the inquiry resolves itself at once into the question whether in the exercise of ordinary

care appellants should reasonably have foreseen that the traveling public or some member thereof as such would be likely to attempt to continue to use the old pathway and without a barrier at the place mentioned would be injured. And in that respect appellants were not required to have foreseen every possible eventuality, but only those which were reasonably foreseeable. No better statement on this point has ever been made than that by Judge McGowen in Illinois Central Railroad Co. v. Bloodworth, 166 Miss. 602, 617, 145 So. 333, 336, as follows: ''Precaution is a duty only so far as there is reason for apprehension. Ordinary care of a reasonably prudent man does not demand that a person should prevision or anticipate an unusual, improbable, or extraordinary occurrence, though such happening is within the range of possibilities. Care or foresight as to the probable effect of an act [or omission] is not to be weighed on jewelers' scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations. Probability arises in the law of negligence when viewed from the standpoint of the judgment of a reasonably prudent man, as a reasonable thing to be expected. Remote possibilities do not constitute negligence from the judicial standpoint.''

Applying the precise facts of this case to the law as stated, and leaving aside the fact that appellee well knew the entire situation and had seen it daily for more than a month, we find, to state the facts more in detail, that when appellants, in accordance with the plans and specifications of the State Highway Department, made this cut, they, at the same time and long before the injury complained of, also brought the approaching entrances from the old highway on both sides of the new highway down to the new level. So that the old road leading southward from the schoolhouse was inducted into the new highway, and on an even level therewith, at a point at the aforementioned corner of appellee's property and

only a few feet from her front gate. There was thence and thereby no probability and scarcely a possibility that any person traveling the old highway and who had formerly followed the course of the old pathway to a point opposite the front steps of appellee's yard and thence turning to the west would any longer follow where that old pathway had been, or would attempt to do so.

And on the opposite side of the highway the contractors had brought the old highway down to the level of the new road, and to an even grade therewith, so that those going to the schoolhouse or to any other point on the east side of the highway had a well-constructed way leading eastwardly into the new highway and of perfect safety and of such character that it was not only improbable but next to impossible that any person coming from that direction would use or think of using the old, or what had been the old, pathway. The testimony is undisputed that, after the new work was done, those formerly using the old way adopted and used the new way, and its situation was such that they would hardly have done otherwise.

Thus the old pathway, never well defined, was entirely superseded by new ways within a few feet and of perfect safety, all as the Highway Department and those acting under it had a right to do, and so located and graded that no reasonable man would ever suppose or even suspect that any person would ever thereafter attempt to use the old pathway. The old pathway had, in fact, substantially disappeared; there was nothing left of it which would invite or mislead any person to take it; whatever identity it formerly had was gone so far as any actual public use was concerned, and certainly so far as any probability of any further attempt of such use; and thus the case is reduced to a demand that the contractors should have erected a barrier at a point where no reasonable man in the exercise of reasonable care

would suppose or anticipate that any traveler would even attempt to enter upon the new highway; wherefore, under the authorities, the demand is not within the law.

There is nothing left in the case, therefore, except the possible contention that appellants were obliged to put a barrier opposite the cut to keep appellee as an abutting owner and resident, as an individual rather than as a member of the traveling public, from falling into the cut, and as already shown that is not the law.

Appellants were entitled to the peremptory instruction. Consequently, the judgment is reversed, and judgment for appellants will be entered here.

Reversed and judgment for appellants.

**Anderson, J.**, delivered a dissenting opinion.

Highway 51 is also a street in the town of Courtland, and the crossing for pedestrians in front of the Herron home had been in use for about ten years. The business and residential section of the town is west and southwest of the crossing and the Herron home. Northeast is the public school building and the residence of the superintendent. This crossing was used by the children from the west and southwest in going to and from school, as well as by others of the general public having occasion to use it. The appellants had not completed their contract with the Highway Commission; they were still engaged in the work. In the progress of the work they had destroyed this crossing; it had been made impassable. The grade at this point had been lowered 5 feet, leaving an almost perpendicular stepoff of that depth from the level of the old street to the new. No other crossing had been provided in its place, although a short distance above the grading was in such condition that the school children could and did cross it in going to and from school.

The appellee was awakened between 12 and 1 o'clock at night by her friend, Miss Bell, who was on the west

side of the street opposite the Herron home. In a loud and distressed voice she told appellee to come, that the home of her aunt on the west side was in flames, and she feared that her aunt, and the only other occupant of the home, a lady, had been or would be burned up if not rescued.

Appellee knew the crossing was impassable, but, under the excitement and stress of the moment, she forgot that fact, and in attempting to make the crossing fell down the 5-foot step-off, breaking one of her ankles and crushing some of the bones in both of her feet.

There was neither a barrier nor a light to give to pedestrians notice in the nighttime of the impassability of the crossing. The majority opinion holds that the appellants were under no obligation to give such notice. How such a holding can be reconciled with the decisions of our court, as well as those from other states, is beyond me. Wade v. Gray, 104 Miss. 151, 61 So. 168, 43 L. R. A. (N. S.), 1046; Standard Oil Co. v. Decell, 175 Miss. 251, 166 So. 379; 43 C. J., secs. 1817, 1818, and 1874, pp. 1037, 1039, 1111, 1112, and 1113. Mere forgetfulness of a known defect will not preclude recovery for an injury to one traveling in the nighttime, where his attention is diverted by some adequate cause. 43 C. J., sec. 861, p. 1096; 45 C. J., sec. 509, p. 950; Standard Oil Co. v. Decell, supra; Birdsong v. Mendenhall, 97 Miss. 544, 52 So. 795; Higginbottom v. Burnsville, 113 Miss. 219, 74 So. 133; City of Meridian v. McBeath, 80 Miss. 485, 32 So. 53; City of Vicksburg v. Harralson. 136 Miss. 872, 101 So. 713, 39 A. L. R. 777. The Decell Case, although not directly in point on its facts, is in principle. The grease pit into which Mrs. Decell fell was unlighted and unguarded. There was a safe way around it only a few steps farther, of which she was aware. She knew the grease pit was there, but she momentarily forgot that fact and fell into it. The court there held that the issue of liability was one for the jury.

During the progress of the work by the appellants, it was their duty to properly guard the public especially in the nighttime, against the danger of this crossing. After the completion of their contract, the obligation was on the municipality to either establish another crossing or otherwise take reasonable steps to guard against injuries at the old crossing.

**Ethridge, J.,** concurs in this opinion.