# No. 14,195.

## PARRISH *v.* SMITH.
(78 P. [2d] 629)

Decided April 11, 1938.   Rehearing denied May 2, 1938.

Mr. W. A. ALEXANDER, Mr. CECIL M. DRAPER, Mr. L. C. GERDING, JR., for plaintiff in error.

Mr. FRED MATTSON, Mr. WARREN B. HALE, Mr. A. B. MATTSON, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DEFENDANT in error obtained judgment in the sum of $7,000 in the district court of Teller county against plaintiff in error as damages for personal injuries sustained by him and resulting from a collision between an automobile in which he was riding and a truck owned by plaintiff in error, defendant below. To reverse this judgment, defendant prosecutes error. Reference will be made to the parties as they appeared at the trial, as plaintiff and defendant, and the cars involved will be designated as Fey's car and defendant's truck.

The collision occurred at about one o'clock on the afternoon of November 3, 1936, at a point some two miles east of Divide on the highway between Colorado Springs and Divide. The temperature was around zero and snow was falling at the time of the accident. Plaintiff left Colorado Springs about noon in a Ford V-8, owned and driven by one Fey, the car proceeding west at a rate of speed of 18 to 20 miles per hour immediately prior to the collision,

according to their testimony. This testimony, however, was qualified by plaintiff, who said it was "Possibly a little more than that, 25 miles in places." Both plaintiff and Fey, the driver, were familiar with the highway and its condition, especially Fey, who was accustomed to driving over it and who had traveled the same road about four days prior to the date of the accident. At the place of collision and in that vicinity, a new highway was in course of construction, at some places crossing the old road and at others following its course. The collision occurred at the easterly end of a cut which was some three or four hundred feet long, and in places fifteen feet deep, which was new construction on the course of the old highway, and all travel had to pass through this cut during the time construction work was in progress and on the day of the accident. All of the surface of the highway within the cut, which occupied its entire width, was broken or plowed up, road machinery and other obstructions were present, and the traffic was under the direction of the construction foreman, who had placed appropriate signs along the immediate line of travel. Work was not in progress on the day of the accident. Owing to piles of dirt, road machinery, and other obstructions, travel had been diverted toward the easterly end of the cut over to the extreme north side thereof, and the evidence discloses that all traffic was on a one way line of travel which followed deep tracks that had been made by the traffic. According to the evidence, these tracks were from ten to twelve inches deep in places. At the easterly end of the cut was an incline or ramp on the old roadbed connecting with the old highway. Defendant's truck, eight feet wide, carrying a one and one-half ton load of acetylene and oxygen tanks, was proceeding easterly in this cut along the one way line in the deep tracks above described, and traveling about ten to twelve miles an hour. It was just about to emerge from the one way passage into and upon the incline to the old portion of the highway, when the collision with Fey's car occurred. From the testimony it appears that when both

cars came to a stop the general line between the old road and the line of the cut was between the two vehicles. Plaintiff and Fey, the driver, testified that they saw the truck when they were about 75 to 100 feet from it.

The evidence shows that the driver of defendant's truck saw the approaching automobile, applied his brakes, and was traveling not over "three to five miles, practically stopped" at the time of the impact. Plaintiff's evidence discloses that Fey was familiar with the road and its condition; that he was aware of the cut or excavation; that he had passed over it four days before and knew that it was not a finished road but was passable for traffic; that on the day of the accident he saw a "Road Under Construction" sign at a point east of where the accident occurred, which, according to his testimony, "meant that there might be danger ahead and," he stated, "I governed myself accordingly." It was further shown that there was a warning sign fifty yards east of the point of accident. Plaintiff testified that as they approached this point he saw the truck a short distance ahead and "that he glanced at Fey," the driver, "just in time to see him swing the wheel and then the crash came." Fey testified that he saw the truck 75 to 100 feet away; that he turned his car toward the bank, put on the brakes and that is the last he knew. Plaintiff was severely injured and the automobile was greatly damaged, as is apparent from Exhibits A and B, which indicate that there was a violent impact. Notwithstanding the testimony of Fey to the effect that the road was all right and not slippery; that his brakes were in good condition, and that he could stop his car when it was traveling at a speed of 18 to 20 miles an hour within 25 to 30 feet, this collision occurred. Kent, a witness for plaintiff, stated there was loose dirt on either side of the line of travel in which defendant's truck was traveling; that the truck was as far to the right as it could get and stay in the tracks that had been made by passing vehicles, and he further testified that this customary line of travel was blocked as a result of the accident.

Eliminating a detailed description of the road conditions and the incidents relating to the accident, we find the evidence disclosing this rather simple situation: Plaintiff was riding in a Ford V-8, which was in good mechanical condition, along a highway which he and the driver knew was in the course of construction; that defendant's truck was being driven through a cut or detour on the line of the old road, which was a part of the new highway, under construction; that on this particular part of the new highway the truck was proceeding in the tracks on the only route then being traveled; that the traffic was being directed, when work was in progress, through this particular place by those in charge of the construction; and that this was a one way track not sufficient in width for two cars to pass. The evidence further discloses that it would have been impracticable for defendant's truck to have used any other route at the time. The truck was traveling in the tracks which, as before stated, were ten to twelve inches deep, made by the traffic over this particular area, and was about to emerge therefrom onto the old highway, when it was discovered by Fey 75 to 100 feet away, and who failed, or was unable, to stop his car, and the head-on collision with the truck occurred.

At the close of plaintiff's case, defendant presented a motion for a nonsuit based on the ground that no negligence had been established on the part of the defendant and that the evidence disclosed that the accident was caused solely by the negligence of the driver of the car in which plaintiff was riding. This motion was denied, and at the close of all the evidence the defendant unsuccessfully moved the court for a directed verdict upon substantially the same grounds. We believe the court should have sustained the motion for a directed verdict.

It is apparent that plaintiff's case was tried and submitted to the jury by the court upon the theory that defendant failed to drive on the right side of the highway and failed to yield sufficient space for plaintiff's car to

pass to the left of the truck. This theory undoubtedly was prompted in an attempt to apply the following statute:

"Drivers of vehicles proceeding in opposite directions shall pass each other to the right and upon roadways having width for not more than one line of traffic in each direction, each driver shall give to the other at least one-half of the main traveled portion of the roadway as nearly as possible." '35 C. S. A., vol. 2, c. 16, §195.

Instruction No. 2 given by the court set out the above statute and concluded with this modification:

"The violation of the statute would be negligence in and of itself, unless the roadway at the point of the accident was not of sufficient width to permit two cars to pass, then the failure to comply with the provision of the statute would not be negligence in and of itself."

The defendant objected to the giving of this instruction upon the ground that the statute was not applicable to the case, in view of the surrounding circumstances, in that the accident did not happen on a traveled or defined roadway, but instead occurred on a way, the character of which was a detour around construction work.

▆▆▆▆ Statutes and rules of the road are designed to govern traffic upon highways, that are prepared for use as such, for public convenience and safety; and are applicable only to permanent lines of travel. The statute quoted contemplates two lines of traffic, and a main traveled roadway sufficient in width for their accommodation. The statute by its terms clearly requires the yielding, as nearly as possible, by each of two vehicles approaching each other, of at least one half of the *main traveled* portion of the roadway. So far as the statute is explicit, the main traveled portion may be in the center, or on either side of the roadway. One half of such traveled portion is exacted of each traveler, if it is possible to be given; if not, then as *nearly* as *possible*. There is an unmistakable inference that a situation might arise in which a strict compliance with these statutory requirements would be impossible. The reasonable provisions are indicated for

roadways, and of course no fixed application thereof could be made to parts of a road under construction, where changing conditions would not permit orderly travel under established rules. An ordinarily prudent traveler, with any warning at all, in approaching such a place, is bound to know that all rules of the road are suspended, and upon entering such an area be prepared—for his own safety and that of others—to submit to, and be governed by, conditions as he finds them. In such circumstances he cannot rely upon written traffic rules.

It is undisputed that defendant's truck was in such an area, and was following a one way line of travel as made and left by previous traffic and required by the existing temporary conditions. It was on the left side of the cut, or unfinished roadway, because conditions, over which the driver had no control, made it necessary that it so proceed. It undoubtedly was traveling along the course where the car in which plaintiff was riding would have traveled, if going in the same direction.

▇▇▇ Since we do not believe this case is governed by the statute in question, it is our conclusion that its submission to the jury under the instruction hereinbefore set out was clearly erroneous. Fey's automobile and the defendant's truck had equal rights to the use of the line of travel within the cut over which traffic was being directed according to conditions, and when defendant's truck already was in the line of travel and about to emerge therefrom and was discovered by plaintiff and Fey when they were a distance of 75 to 100 feet away, it is apparent that Fey was in the better position to avoid the collision, and under the circumstances, having knowledge of the uncertain conditions to be expected, it was his duty to take every precaution and necessary action to avoid an accident with any vehicle he might have reason to expect would be upon this one way line in the unfinished area. The circumstances required him to approach the area with caution and be prepared to stop his car, if necessary, to avoid a collision. This rule applies even to a motorist

who, traveling on the right side of a highway, is confronted by a vehicle traveling on the left or wrong side of the road, in that he is required to exercise ordinary care in order to avoid a collision, and the mere fact that the other vehicle is on the wrong side of the road, does not justify a motorist who is on the right in driving into it if he can avoid doing so. This holding absolves the driver of defendant's truck from all negligence under the circumstances of the case, and results in the inevitable conclusion that the negligence of the driver of the car in which plaintiff was riding was the sole cause of the accident. We believe it was error for the court to give Instruction No. 2, as also was its refusal to give the following instruction tendered by the defendant:

"You are instructed that if you believe from the evidence that the roadway upon which this accident occurred was of insufficient width to permit the truck to go to the right of the center line of such roadway and permit the passage of the automobile, that the law of the road, under such circumstances, has no application and the defendant would not be guilty of violation of this rule."

In this case plaintiff brought suit as a guest riding in Fey's car and he expected to recover regardless of any negligence on the part of Fey, the driver, under the established rule that such negligence could not be imputed to the guest; but an equally well established rule prevents his recovery. It is as follows:

"It is not a question as to whether the negligence of the driver is to be imputed to the guest or occupant, but if the driver caused the accident there could be no reason why a third party should be held responsible for it." *Brickey v. Herring,* 96 Colo. 181, 41 P. (2d) 298.

The judgment is reversed and cause remanded with directions for a new trial, if any, in accord with the views herein expressed.

Mr. Justice Hilliard, Mr. Justice Young and Mr. Justice Knous dissent.