## GAEDE v. UNION PAC. R. CO.
### No. 41.

District Court, D. Colorado.
July 13, 1939.

H. Gordon Howard, of Fort Collins, Colo., for plaintiff.

E. G. Knowles and Montgomery Dorsey, both of Denver, Colo., for defendant.

SYMES, District Judge.

This case was tried to a jury on two causes of action. A directed verdict in favor of the defendant disposed of the first, in which plaintiff sought to recover for the death of her husband, the driver of the car. The second went to the jury, which found for plaintiff in the sum of $1,800. We now consider defendant's motions for a directed verdict made at the close of all the evidence and for a new trial. The defendant says it was not negligent and that the proximate cause of plaintiff's injuries was the stalling of the automobile, in which she was riding as a guest, on defendant's tracks when struck by defendant's freight train.

Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has cast into the limbo of neglect and oblivion the Federal decisions applicable to grade crossing accidents between trains and automobiles and we turn to the decisions of the highest court of our state for light and guidance on this most prolific cause of litigation.

First let us state the relevant facts. The plaintiff, her husband and one Schneider were driving west in an old automobile on 5th Street, Greeley, Colorado, on the night of January 4, 1939. As they approached the intersection of that street with the main north and south line of the Union Pacific Railroad Company, consisting at that point of four or five tracks —plaintiff and Schneider say their speed was about 15 miles an hour—and as they emerged from between buildings on each side of the street onto the tracks, they slowed down to 10 miles. The two survivors saw the train approaching from the south half a block off on their left on the third track moving at a speed of 10 to 25 miles an hour. Schneider jumped out of the automobile just before it was struck. He said the engine in the auto had stopped but the car continued to slowly roll onto the track; that there was something wrong with the motor, the engine started to chug, etc.

The plaintiff testified they all looked and listened in time but saw no train. They were hit six seconds after they first saw the engine half a block away—200 feet. At the close of plaintiff's case I directed a verdict for the defendant on the first cause of action on the ground that the deceased, as driver of the car, was negligent and recovery was barred.

The defendant's evidence is that if the box cars on the first switch track that the auto crossed extended out in the middle of the street as plaintiff contends, and defendant denies, yet those in the auto could see 200 feet to the south on the main track from a point 28 feet east of the main track. Other defendant's witnesses were crossing the tracks from the opposite direction. Their view was not obstructed and they saw the train in time to stop. They saw the auto in question approaching and say it had stopped when it was hit.

The train consisted of two engines and 30 freight cars. The brakes were working, the headlight showing up the right of way half a mile ahead and the strong preponderance of the evidence is that the whistle and bell were working, not only at this crossing but at two or three the train crossed before it got to 5th Street. The engineer, Zahner, in charge of the train, was sitting on the right side of the cab of the first engine and said as he entered the yards he slowed down to 20 to 25 miles an hour and was drifting, not working steam. He saw the auto moving from his right very slowly along 5th Street. As it came over the tracks he thought it had time to cross ahead of his engine. He watched its progress until it passed out of his sight directly in front of his engine. He first saw it when he crossed 6th Street, a block away—510 feet according to defendant's map. The car was then 48 to 50 feet from the track. The thought flashed through his mind "hope they will get across." Did not think it necessary to stop.

Yost, his fireman sitting on the left side of the cab, first saw the auto when it stopped on the left rail 50 feet away. He immediately yelled, whereupon Zahner, according to his own testimony, for the first time applied the emergency brakes at the instant the engine hit the rear end of the automobile.

Stone, the train conductor, happened to be riding on the left side of the front engine and saw the auto stop on the track.

Pickenpaugh, engineer of the second engine, likewise sitting on the right side of his cab, said the auto drove to the first track, almost stopped, and then started up again.

Parrish v. Smith, 102 Colo. 250, 78 P.2d 629, 632, says the negligence of the driver cannot be imputed to the guest, and also "It is not a question as to whether the negligence of the driver is to be imputed to the guest or occupant, but if the driver caused the accident there could be no reason why a third party should be held responsible for it." Citing Brickey v. Herring, 96 Colo. 181, 41 P.2d 298.

The latter case involved a collision between two automobiles. The court found there was not sufficient evidence to establish negligence on the part of the defendant driver, while the driver of the car in which the plaintiff was a passenger was admittedly negligent, both in respect to speed and violation of the city ordinance giving the right of way to the defendant car. That the negligence of the driver of the car in which the plaintiff was riding was the sole and proximate cause of the accident. So the lower court should have determined the question as a matter of law.

With these rules in mind we now examine the evidence to see whether defendant's conduct made a question of negligence for the jury. That in turn depends largely upon the action of the engineer. He was in charge of a freight train passing through a town of considerable size at a reduced speed, 20 to 25 miles an hour, and not using any steam. He tells us he first saw the auto from 6th Street, 510 feet away. It was 50 feet from the track, approaching slowly. That the thought flashed through his mind "hope they get across." Apparently there was a serious question in his mind at that instant whether there would be a collision or not. So: Was it his duty then to do all that was possible to avoid a collision? Indicating of course the immediate application of the emergency brakes. He says he did nothing, continued to watch the auto and let his train proceed without slackening the speed meantime blowing the whistle and ringing the bell. Under all the surrounding circumstances, did he fulfill the duties imposed by law on an experienced and prudent engineer? We think not. It cannot be said with certainty whether the immediate application of the emergency brakes would have avoided the accident. Yet Zahner testified he stopped his train within 10 or 12 car lengths, approximately 500 feet—the distance at which he first saw the auto. That is be-side the point, however, if he failed to do all he reasonably could to avoid a collision. He saw the auto, noted its very slow speed and evidently realized instantly he would either hit or miss the auto by a very few feet. The jury might well say that in taking this unnecessary gamble he was guilty of negligence.

Our discussion is on a factual situation different to that which often arises out in the country, for instance, where a train and an automobile approach the same crossing in full view of each other. There the engineer might well rely upon his right of way and proceed without application of the brakes—at least until he is too close to the crossing to avoid the accident.

The Supreme Court of Colorado in Nichols v. Chicago, B. & Q. R. Co., 44 Colo. 501, at page 516, 98 P. 808, 814, discusses the duty of the engineer approaching a highway crossing. The Court says: Ordinarily he may presume one approaching a public crossing is aware of the train and will not place himself in imminent peril, but is not justified in relying upon this presumption if circumstances are such that it should occur to him as a reasonably prudent person that the pedestrian is not aware that a train is approaching the crossing. He cannot blindly assume the traveler will not be guilty of negligence. "Ordinary care on the part of an engineer requires vigilance to guard against a dangerous situation reasonably to be apprehended as well as one actually imminent." And that he must take steps to prevent the traveler from placing himself in a situation of danger, from which it will be impossible to extricate himself. We think this supports our view that it is for the jury to say whether Zahner did, or should have realized, when he first saw the automobile approaching from his right, that a dangerous situation was in the making, and should have then by applying the brakes, done all he could to avoid an accident and not wait until the outcry of his fireman indicated an accident was actually imminent. An application of the brakes at that instant would have done no harm and might well have saved the driver's life and injury to the plaintiff and the car.

The objection to the complaint is not well taken. All the new procedure requires is a brief, factual statement indicating what the plaintiff complains of. This has been done and it makes little difference

whether it speaks in terms of proximate cause or last clear chance.

This memorandum was dictated before I read Dwinelle et al. v. Union Pacific Railroad Company, etc., 92 P.2d 741, Supreme Court of Colorado, July 3, 1939. It presents the different situation referred to above, i. e., a collision between a train and a truck at a crossing out in the country. Mr. Justice Burke says there was no obstruction in the view and emphasizes the fact that the rails "were badly frosted rendering his brakes practically useless;" that neither brakes nor sanding of the track would have retarded the speed of the train "to the slightest degree;" and a stop could not have been made under 1,000 feet, while the truck-driver "could have stopped his truck in 100 feet or less." Further the view of the motorman was obstructed by his own radiator for the last 250 feet, from which point the truck-driver had ample time to stop short of the crossing. Against this we emphasize what we have already stated, among other facts, that Zahner, the engineer in our case, realized a collision was imminent when he crossed 6th Street and could have stopped in time.

We think the case distinguishable, at least until Nichols v. Chicago B. & Q. R. Co., 44 Colo. 501, at page 516, 98 P. 808, is overruled.

The motions are denied.