Lancaster *v.* Lancaster.

Mar. 3, 1952.

No. 38191 (57 So. (2d) 302)

**Stevens & Cannada,** for appellant Michael & Company.

**Watkins & Eager** and **T. J. Tubb,** for appellant Bob Lancaster.

Cunningham & Cunningham, for appellee.

Alexander, J.

This is an appeal from a judgment for personal injuries suffered by appellee. The essential facts are as follows: J. B. Michael & Company, Inc., hereafter referred to as Michael, being under contract with the State Highway Commission to construct a link of a public highway in Monroe County, sublet the contract for the watering of the sodding placed upon the shoulders of the highway to Bob Lancaster who employed his son, the appellee, to perform this work. Such work was undertaken by the use of a sprinkling machine consisting of a water tank mounted upon a specially designed motor truck whence the water was pumped by a gasoline motor through a hose with a sprinkler head. It is asserted that an efficient operation of the device required that it be operated near the driver's left margin of the paved highway so as thoroughly to spread water upon the adjacent shoulder. To this end the truck proceeded in an extra low gear and at a retarded speed. Such was the manner of operation at the time of the injury. While undertaking this work at night in alleged conformity with the requirements of the State Highway Commission, plaintiff was demonstrating to a fellow worker the proper manner of using the hose. The truck was being driven slowly eastward by a third employee.

A third party, Mrs. Majors, had entered upon the link of road, and after proceeding east to a barricade, turned about and proceeded west in retracing her course. She was accompanied by her husband. Upon approaching the watering truck, which was equipped with two headlights, a row of lights along the top of the driver's cab, clearance lights along its sides and two lighted flares, Mrs. Majors undertook to pass the truck on the north side by driving over onto the shoulder. Plaintiff had his back turned, and the noise created by the motors and pump prevented his hearing the approach. Mrs. Majors testified that she had

been traveling at about twenty miles an hour but slowed down to about fifteen miles as she reached the truck. Witnesses for appellee stated that the car "zoomed by". While so undertaking to pass the truck her car struck the employee, Archie Lancaster, knocking him a considerable distance down the embankment and inflicting serious crippling injuries. At the moment appellee was, as stated above, showing a helper how to use the sprinkler. Appellee did not see the Majors car approaching. After striking appellee the car traveled, before being brought to a stop, a distance variously estimated up to 145 feet.

Suit was brought against Mr. and Mrs. Majors, Michael and Lancaster. Nonsuit was taken as to Mr. Majors. There was a verdict and judgment in favor of Mrs. Majors and against Michael and Bob Lancaster. Appeal is taken by the last two defendants. There is no cross-appeal and the verdict acquitting Mrs. Majors is not here involved.

■ ■ Before considering the case upon its merits we must notice an assigned error involving an alleged disclosure of liability insurance coverage. During a cross-examination of the brother of the plaintiff by counsel for Mrs. Majors, the following colloquy ensued:

"Q. And you say the first thing you knew about the car was when the car came by the water truck and your truck, struck your brother and then went a hundred thirty feet down the shoulder? A. The first I saw it was going to hit my brother.

"Q. And it ran past you 145 feet down there? A. That's what I said.

"Q. When did you measure that? A. I didn't measure it.

"Q. You weren't interested in how far the car went, you were interested in your brother. A. Yes, but next day the Insurance Company measured—

"Q. Who measured it? A. I don't know.

"Q. You were just guessing then? A. No, wasn't guessing, well it was in the neighborhood of 100 to 145 feet.

"Q. You didn't measure it yourself that night or the next day? A. I was there when they measured it.

"Q Who measured it? A. Insurance adjustors.

"Q. Who was he? A. I don't recall.

"Q. What was he doing out there measuring?

"Mr. Eager: We object to that.

"The Court: Sustained."

The considerations tending to support this assignment include the fact that there were three defendants who as to each other were adversary parties; that the intimation as to the existence of liability insurance is poisonous to an otherwise impartial mind regardless of whether such coverage exists as a fact or how the suggestion may arise; and that the disclosure was emphasized by repetition. On the other hand, it is contended that the statement by the witness was voluntary and not responsive to the inquiry; that it was elicited by a defendant who was engaged in a common defensive cause with appellants; that it would be unreasonable to allow a defendant, or one of several, to inject such prejudice whereby a plaintiff's case may be undermined without contributing fault; that the objection and motion for a mistrial were not promptly made; and that, even if the statement conveyed the idea that an insurance company was interested, it is not to be assumed that such coverage protected any particular defendant.

There are several considerations which rendered this testimony hazardous. By calling upon the witness to repeat the identity of the party measuring distances, there was supplied an emphasis which in the initial voluntary statement was lacking. The jury, by acquitting the defendant whose counsel elicited the answers, could well have considered that she would not thus encourage a verdict against her and that there remained a subtle intimation that she was not so protected. Such is the reasoning of the appellants onto whose shoulders the entire responsibility was allegedly shifted, since the jury, for reasons

of their own, acquitted the defendant whose act caused the plaintiff grievous injury.

Such references when brought out by plaintiff's counsel are almost invariably ground for reversal. It is impossible to catalog all similar references and assign each to a definite category. The rule may not be uniformly packaged for general use under any designated label. Each case presents its own problem. Both the facts and the factors are unique. After repeated analysis of the situation presented here we have concluded that this error is not reversible. Compare Petermann v. Gary, 210 Miss. 438, 49 So. (2d) 828.

Point is made that this action by the son, Archie Lancaster, a minor, cannot be maintained against his father. Appellants cite Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L.R.A. 682. This case recognizes the rule of incapacity as based upon maintenance of the integrity and peace of the family relationship, but concedes that full emancipation undermines the rule where such reason therefor fails. In the instant case the son was twenty years of age and became of age ten days after his injury. He was married and lived apart from his father. At the time of the accident a child was expected, which was born thereafter. Under these circumstances, there was a complete emancipation and the action was therefore maintainable. It is immaterial that his father assumed gratuitously a substantial amount of medical and hospital expenses. The authorities on this point are set out in brief for appellee. Compare also Deposit Guaranty Bank & Trust Co., Gdn. v. Nelson, Miss., 54 So. (2d) 476.

We now examine the liability of Michael, which issue is presented by the refusal of the trial court to grant a requested peremptory instruction in its favor. This defendant was under contract with the State Highway Commission to construct a link of highway in Monroe County. This work had been completed except for the watering of the sodding upon the shoulders and em-

bankment. This work was sublet by Michael to Bob Lancaster. In view of the necessity for the completion of such detail, Michael had placed adequate warning signs at the entrance onto this link of road and at other proper points indicating that the road was still under construction and that there was danger in its use. It was supposedly closed to through traffic, but required to be left open to local traffic.

At the outset it should be pointed out that, regardless of the adequacy of warning signs, any absence or insufficiency thereof was wholly unrelated causally to the plaintiff's injury. Mrs Majors had seen the signs and was completely aware of the situation. There was no defect alleged or shown with respect to the work Michael was required to do. Although upon complaint of the subcontractor Michael had promised ''to take care of traffic,'' such promise is relevant more to reveal some necessity therefor than to charge it with a duty to forbid it altogether in the face of his contract to keep the road open at least to local traffic. So that as far as its duty to construct the highway as such is concerned there is no evidence of any breach thereof causally contributing to the appellee's injury.

The only plausible theory under which Michael's conduct could be left open as a factual issue is that there remained a duty to protect the servants of the independent contractor against unreasonable risks. It retained no control over the means and methods whereby Bob Lancaster was to prosecute his work. Indeed the subcontractor testfied that Michael did not supervise or control him and that he was his own boss using his own methods. It is to be stressed that this case does not involve an injury caused to a third person. The exceptions to the complete responsibility of an independent contractor find no place here since the injury was suffered by a servant of the independent contractor. It has often been announced that even if the work is inherently dangerous, the contractee does not remain liable for injuries caused to a

servant of an independent contractor by the negligence of the latter, and that such servant is not a third person under the doctrine covering this relationship. Humble Oil & Refining Co. v. Bell, Tex. Civ. App., 180 S.W. (2d) 970; Bell v. Humble Oil & Refining Co., 142 Tex. 645, 181 S.W. (2d) 569; Le Vonas v. Acme Paper Board Co., 184 Md. 16, 40 A (2d) 43; 57 C.J.S., Master and Servant, § 600. We do not, however, pronounce this principle as controlling here since we find that the work was not inherently dangerous. We base our conclusion upon the nonliability of Michael in respect to dangers or exposures, if any, under the sole control of the independent contractor. The injury was caused by no failure of any legal duty owed by Michael to the plaintiff. The peremptory instruction requested by Michael ought to have been given.

We are left then with the question whether the issue of negligence on the part of the independent contractor, Bob Lancaster, ought to have been submitted to the jury. Referring again to the fact that the injury was caused to the servant by a third person, we consult the authorities dealing with this situation.

The highway was used by motorists and such fact is borne out by the testimony and accentuated by the contractor's complaints in regard thereto. He testified as follows:

"Q. Now, you said you had been on jobs where they allow traffic to go through while the workmen were working, you have known a lot of serious trouble coming from that too, haven't you? A. I would think so, I have.

"Q. Haven't you noticed a lot of accidents happening where traffic is coming through? A. Sure.

"Q. As an experienced man isn't it awfully dangerous to have traffic coming through unregulated where there are men working—(Objection as a conclusion. Overruled by the Court.)

"Q. You know, don't you, where they allow traffic to come through such traffic as was coming through this road, hasn't it been your experience that contractors have

had accidents and trouble where traffic is coming through where men are working? A. Yes.

"Q. That's common, isn't it? A. It's very common, yes."

And later the examination was continued:

"Q. But you do know there was constant traffic coming through? A. At the times I was there, yes.

"Q. And lots of speed? A. Some of them pretty speedy."

The record shows that the method adopted required the watering truck to travel upon its left side of the highway near the north edge of the concrete so as to reach the sod with the sprinkler hose. As Mrs. Majors was returning westward she noticed the truck. It was on its right-hand side but crossed over to its left side during the period of her approach. When she reached the truck it was on its left side of the highway and in the lane in which she was traveling. The circumstances under which the injury occurred have already been mentioned.

There was nothing mechanically wrong with the truck. Although Mrs. Majors testified that the lights of the truck were "jumping" or flickering, yet she saw the truck and undertook to avoid a collision, explaining her maneuver as follows:

"Q. Did you stop your car before you got to the truck? A. No, I was trying to get out of the car's way.

"Q. Why didn't you stop?

"Mr. Eager: We object.

"The Court: Overruled.

"A. Well, I didn't want to be hit and I took to the right as far as I could which I had been taught was the way to drive a car."

So far as Mrs. Majors is concerned, the lights upon the truck had served their function. The question whether she acted reasonably in electing to drive to her right upon the shoulder of the highway rather than to stop or to pass upon her left side has been resolved by the verdict of the

jury in her favor. It evidently decided that she had acted reasonably. ■■ The crux of our inquiry is whether it was reasonably foreseeable that the method of work adopted by the contractor exposed his servant to an unreasonable risk of injury by third persons.

The general principles governing a master's duty must be passed over so that the issue may be confined to the reasonable foreseeability that some injury might be caused under these particular conditions.

An employer is bound to take into account the reasonable probability that injury may be caused to the employee by a third person. We restrict our survey to such cases.

In Gulf Refining Co. v. Ferrell, 165 Miss. 296, 297, 147 So. 476, 478, an employee was set at the task of painting signs upon the surface of a concrete street adjoining his regular place of work. While so engaged he was struck and injured by a passing motorist. In affirming a judgment of liability against the employer it was pointed out that, while it was unnecessary to adjudge whether a street devoted to motor vehicle traffic is of itself a dangerous place, it could be held to be unreasonably unsafe when the employee is required to concentrate his attention upon the assigned task. We there stated: "The street, at the point where Ferrell had been working, as stated, for about ten minutes, was not a reasonably safe place, he had a right to a warning from the master. It was necessary for him to do this work, and he was, in so doing it, blindfolded, as it were, upon a street devoted to traffic. He was not in a situation such as the purveyor of ice, the stenographer of the lawyer, or the street sweeper. He was not warned. There can be no question that this was not a safe place to work as he was situated." See also Huddy, Encyc. Automobile Law, Sec. 106.

In Billups Petroleum Co. v. Entrekin, 209 Miss. 302, 46 So.(2d) 781, the employer had covered the drive-in area of its service station with loose gravel which, by the constant entering and leaving by motorists, had been cast

upon the surface of the adjoining highway. This gravel if not removed was held to constitute a menace to motorists, one of whom skidded thereon, and his car, thus placed out of control, ran into a station employee then engaged in servicing an automobile. The act of the third person was held not to have been an independent intervening cause and the case was submitted to the jury upon the issue whether some injury was reasonably foreseeable as a probable consequence of permitting gravel to remain upon the highway. Cited in the opinion was United Novelty Co. v. Daniels, Miss., 42 So. (2d) 395, where an employee was assigned the duty of cleaning a coin-operated machine with gasoline. A rat, dislodged therefrom, sought refuge under an open gas burner which ignited gasoline fumes contained in the coat of the rodent which ran again to the machine and caused an explosion of such fumes. The case turned upon the issue whether some harm might have reasonably been foreseen from the method and circumstances of the work. While even the devotees of analogy would be reluctant to designate the flaming rodent as a "third person", it was at least a living agency wholly distinct from the operation itself. So also in Coast Ship Co. v. Yeager, 120 Miss. 152, 81 So. 797, the injury was caused by a third person who was at the same time an employee. Yet the plaintiff had been placed at work in a place where injury by another person was reasonably to be foreseen.

More to the point is Russell v. Williams, 168 Miss. 181, 150 So. 528, 151 So. 372. Here an employee was placed upon the running board of the defendant's truck and was injured when run into by a third person. It was held to be a factual issue for the jury whether the employer should reasonably have foreseen that the driver would turn left without signalling and thus expose the employee to danger. It was not necessary to find that it was a reasonable anticipation that a third person would cause the injury. The point here controlling is that, included in

the scope of reasonable prevision are the negligence of another and even an intervening cause.

We need not meet an implied challenge as to what measures should have been adopted to constitute full compliance with a duty to use reasonable care to furnish appellee with a reasonably safe place for, and methods of, doing the work. Certainly there was danger, for there was injury,

Moreover, the contractor disclosed his awareness of such danger. This, of course, is not enough to impose liability. There must be a legal duty violated. The jury found that the contractor had not used reasonable care to protect his employee. Was it authorized to make such finding?

In the solution of this problem we must take into account the dilemma presented to Mrs. Majors by the course pursued by the contractor. The water truck had shifted from its right side to its left. She was confronted by the necessity of electing whether to use her left lane in defiance of an instinct inculcated by training and compelled by law in ordinary cases, or to risk the unusual procedure of passing to her extreme right entirely off the highway. As stated, she must have been found to have acted not unreasonably by the jury which perhaps unconsciously utilized the reasoning of Priestley v. Hays, 147 Miss. 843, 112 So. 788, wherein an emergency was held to justify a technical violation of the rules of the road.

Of a surety, absolute protection could have been furnished, although such a degree of care is beyond any legal duty owed to appellee. It is not for us to inquire as to what warnings or safeguards, if any, the contractor could or should have employed, or whether further safety measures or other methods would impose an unreasonable burden. For example, the jury may have found no reason why the hose of the watering tank could not have been placed on its right side or that other reasonably available safeguards could have been used.

In McLemore & McArthur v. Rogers, 169 Miss. 650, 152 So. 883, 884, a servant was put at a work requiring a constant attention and while so engaged, another servant negligently caused wet concrete to fall into the eyes of the former. We stated: " * * * where the master places his servant at a place and in a character of work which exposes the servant to hazards against which the servant cannot by the use of due care, protect himself and at the same time do his work, the master must then take reasonable care to warn the servant or to erect guards, if either of these are reasonably practicable, and, if not, the master must so order and control the method of work as to obviate the danger, so far as reasonably practicable."

In Alabama & V. R. Co. v. Graham, 171 Miss. 695, 157 So. 241, 242, plaintiff's decedent was killed when an automobile in which he was riding ran through the guard rails and fell to the ground below. The driver was his wife. The facts, as stated in the opinion, are as follows: "They were traversing the bridge which carried United States Highway No. 80 over the track of the appellants, and as she was driving down the eastern slope, or approach of the bridge, she came up behind a Chevrolet coupe proceeding in the same direction; she turned to the left for the purpose of passing this coupe, and, as she did so, she saw an automobile approaching from the east. She then attempted to cut back behind the coupe, and, as she did so, she struck the left side of the coupe, with the result that her sedan skidded or was thrown to the extreme left or north side of the bridge and was headed at an angle into the north wheel guard and guard rail. The sedan mounted the wheel guard and, after balancing for a perceptible time on the edge of the bridge, dropped to the ground below, about 22 feet."

It was shown that the bridge or overpass and its guard rails were constructed in accordance with the plans and specifications of the State Highway Department. The declaration was based in part upon a negligent failure to maintain reasonably adequate guard rails. Despite a

finding and an instruction that the driver was guilty of negligence, the issue of the negligence of the railroad was held to have properly been submitted to the jury, such negligence to be adjudged in the light of an expectation of passing traffic and the reasonable sufficiency and safety of the guard rails, regardless of the fact that they were of an accepted standard of construction. It was not controlling that the injury came about as a result of a negligent act of another, even though it followed an unusual and complex combination of circumstances.

As said in Supreme Instruments Corp. v. Lehr, 190 Miss. 600, 627, 199 So. 294, 1 So.(2d) 242, 245 : "Requisite care remains always that degree of care commensurate with appreciable danger appraised in terms of ordinary prudence and interpreted in the light of the attendant circumstances. Application of this principle leads to results which give play to such varying factors as time, place, and purpose. Although the expression and the basis of the rule remain fixed, its flexibility permits accommodation to each particular case. The area of factual doubt within which juries should be allowed to function is circumscribed within a circle of which care is the axis and reasonableness the radius. Within this area reasonableness is to be adjudged by reasonable men, and their right to differ is commensurate with their duty to consult. Beyond this limit lies the field of substantive law. Here are found those issues as to which reasonable men should not be in disagreement. It is here that 'the court is not called upon to decide the issue of fact one way or the other, but it is called upon to decide whether there is an issue of fact under the law to go to the jury.' "

Plaintiff stated that when both motors were in operation, as was the case here, he could not hear, and from his position he could not see, an approaching car.

For us to say flatly that the master had used all reasonable means to guard the servant against reasonably foreseeable dangers, would result in an exercise of the jury's function. The liability of Michael has been found

to lie "beyond the limit" of the circle of jury debate because, by disclosing no duty owed to plaintiff in the circumstances, its liability lies in "the field of substantive law". Such is not the case as regards the liability of the subcontractor. We have no authority to say judicially that the subcontractor had used reasonable measures under which the work could have been conducted with reasonable safety. It was not error to refuse the peremptory charge in his favor.

The other assignments are directed to the giving and refusing of certain instructions. We have examined each carefully, and when taken together they presented the controlling issues without reversible error. The instructions given on behalf of Mrs. Majors raise questions which are now moot in view of her acquittal. It was not error to refuse a charge that she was guilty of negligence and that, if, but for such negligence, the injury would not have occurred, the verdict should be for the other defendants.

For the considerations discussed, the judgment must be reversed as to J. B. Michael & Company, Inc., and judgment will be entered in its behalf. It is affirmed as to the liability and judgment against the codefendant Bob Lancaster.

Reversed and judgment here as to J. B. Michael & Co., Inc., and affirmed as to Bob Lancaster.

**Roberds, Lee, Kyle** and **Ethridge, JJ.**, concur.

**Hall, J.** (Dissenting.)

I respectfully dissent from that part of the controlling opinion in this case which holds that there was a jury issue on the question whether the appellant, Bob Lancaster, was guilty of negligence which proximately contributed to appellee's injury. My record as a member of this Court will show that I am a strict adherent to the principle that all issues of negligence are for the jury to determine, but where no negligence is shown there is nothing

left for a jury to pass upon. The cases are legion where this Court has so held, but as precedent for this view it is unnecessary to go any further than that part of the controlling opinion herein which holds as a matter of law that there was no negligence on the part of the principal contractor Michael. I am in full accord with that holding.

There are many facts in the record here which are not mentioned in the controlling opinion and which I feel are necessary to be set out in order that the full picture of this case may be seen. The stretch of new road was approximately eight miles in length. The surface had not been completed. Employees of the contractor, Michael, were engaged in the daytime in finishing up this work and in patching the paved portion where defects had appeared. Michael was required by his contract to permit local traffic on the road and he was powerless to keep all traffic off the road. He was required to maintain barricades and warning signs and he fully complied with this requirement in every respect. It was utterly impossible for any person to drive a vehicle onto the road without going completely around the barricades and driving onto the shoulder of the road in entering it. The paved portion was 22 to 23 feet in width. The watering truck, owned and operated by Bob Lancaster, was slightly under eight feet in width. It was a regular 1½ ton Ford truck with a flat body. On top of this body was a water tank. On the occasion of the accident in question the two headlights on the truck were burning, the lights on top of the cab were burning, and the clearance lights were burning. The truck body was wider than the cab and on the right side there were two flares burning, one at the front corner and one at the rear corner. According to the record the truck was lighted up like a Christmas tree.

The equipment was standard in every respect. There is no complaint that anything was wrong with the equipment. Bob Lancaster had been engaged in this type of work for seventeen years and had never before had one of his employees injured and had never found it necessary to put watchmen in front of the truck to warn passing mo-

torists. On the night in question the Majors car was the only one which passed prior to the accident. The road was level and straight for a distance of at least one-half mile in each direction. Mrs. Majors saw the watering truck pull over to the left side of the road a considerable distance before she reached it. The record shows without conflict that it is usual and customary when watering sod upon the shoulders of a new highway to drive the truck along the left side of the highway for the reason that the driver's seat is always on the left side of the vehicle and it is necessary for the driver to keep the truck as near as possible to the extreme edge of the highway and to frequently look back to see that the truck does not move too fast for the man handling the water hose. The truck here was on the very edge of the paved portion, which left a clearance of 14 or 15 feet of paved highway to its right which Mrs. Majors could have used in passing the truck. She had no business on the highway and was traveling it purely for pleasure. After seeing the truck move over to the left side of the highway in the course of the watering operation she continued toward it and did not avail herself of the open highway to the right of the truck. She knew the highway was under construction. A flagman in front of the truck could not have advised or warned her of anything that she did not already know. She claims that she slowed down, but she did not stop. She turned completely off the pavement onto the shoulder of the road and struck the appellee knocking him about 45 feet and continued for a distance of about 145 feet before she brought her automobile to a stop. How a fair and impartial jury could have acquitted her of negligence is beyond comprehension or understanding. In my opinion her gross and wanton negligence was the sole proximate cause of this unfortunate accident, and this Court should so hold as a matter of law. Now let us examine the allegations of the declaration as to the negligence upon which appellee relies.

The negligence charged against Bob Lancaster was (1) that he negligently allowed traffic to habitually pass

through and to jeopardize and endanger the safety of the plaintiff while he was doing his work; (2) that he should have had signs near the place where his employees were engaged at work; (3) that he should have had more men on the job and that guardsmen should have been stationed in front of and behind this work with proper danger signals so as to afford reasonable protection to his employees while doing their work; (4) that it was his duty to formulate and promulgate safety rules for the protection of his employees; (5) that he should have had watchmen to warn the employees of approaching traffic and to warn approaching traffic of the presence of the workmen; and (6) that he should have had men with sufficient lights and other signals on each side of the working crew to warn the public of the presence of the workmen.

As to the first alleged act of negligence, it is undisputed that under his contract with the State Highway Commission the principal contractor was obligated to permit the passage of local traffic and neither Michael nor the subcontractor had the right to prohibit traffic on the road.

As to the second alleged act of negligence, there were signs at each end of this construction and all travelers were fully advised that the road was under construction. It is shown by the record that from the time the watering started until the time of the accident the Majors car was the only vehicle which passed along the road and Mrs. Majors knew full well that the road was still under construction and had not been opened to through traffic.

The third alleged act of negligence would be applicable if the appellee in this case had been required to work in the traveled portion of the road, where traffic was constantly passing, as was held in Gulf Refining Company v. Ferrell, 165 Miss. 296, 147 So. 476, which will be discussed later herein. In this case, however, the appellee was not working in the roadway but was completely off the traveled portion thereof and standing on the shoulder at a place where no reasonable person could have concluded that passing traffic would endanger him.

As to the fourth alleged act of negligence it is only when the work is both dangerous and complex that the master is required to adopt a reasonably safe system of work and promulgate safety rules. Tatum v. Crabtree, 130 Miss. 462, 94 So. 449; Brown v. Coley, 168 Miss. 778, 152 So. 61. Danger alone is not negligence as this Court has held on numerous occasions.

The fifth and sixth grounds of negligence are the only ones on which appellee relies for affirmance of his judgment. These are that Bob Lancaster should have placed watchmen in front of and behind the truck to warn his employees and the traveling public by lights or otherwise. Yet, it is shown without dispute that in the course of seventeen years in doing this very type of work no watchmen have ever been used and no employee of Bob Lancaster has ever been injured by a passing motorist. The experience of all these years demonstrates that reasonable care does not require a watchman. And, indeed, what could a watchman have done on this occasion?' Mrs. Majors saw the truck lighted up like a Christmas tree and knew that it was on the left side of the road where for seventeen years Bob Lancaster had always operated similar trucks. She had just been over the road and knew that it was 22 and 23 feet in width. She must have known that there was ample passing space on the South side of the truck and yet by her gross and wanton negligence she turned off onto the shoulder of the road on the North side. Because of her utter disregard of the whole situation a watchman would in all probability have also been struck by her automobile.

It is significant to note that the controlling opinion does not undertake to say in what respect the employer could or should have exercised any more care than he did on this occasion. It does suggest, however, a matter which was not even alleged or claimed as negligence in the declaration when it says that "the jury may have found no reason why the hose of the watering tank could not have been placed on its right side". The record shows

that the hose was attached to neither side but to the top of the water tank and that the water was forced through the hose by means of a separate pump, and it further shows that this was standard equipment on all such jobs. The record further shows without dispute that it is always customary and necessary for the watering truck to travel on the left side of the highway so that the driver, who is on the left side, can keep the truck right on the edge of the paved portion and not get off on the sod and so that he can at intervals watch the man holding the hose and avoid traveling too fast.

There is some comment in the controlling opinion with reference to certain admissions made by Bob Lancaster. The record shows that Bob Lancaster was a most willing witness in favor of his son. He had personally paid out large medical and hospital bills in having his son treated for his injuries and was most interested in seeing his son recover from his insurance carrier, yet he was forced to admit that the equipment was all standard in every respect, that the truck was fully equipped with all necessary lights and warnings to passing motorists, that it was proper to operate it on the left side of the highway just as was being done, that it was necessary to do the watering in the nighttime so that the rays of the sun by day would not quickly cause the water to evaporate and cause the fertilizer to scorch the grass, that this work had been done by him in this manner, with this type of equipment, for a period of seventeen years without injury to a single employee, and that never during this entire time had he ever considered a watchman necessary. Under this situation no employer could reasonably be expected or required to have watchmen walking ahead of the truck to warn passing motorists.

There was no "rule of the road" applicable in this case which required this truck to travel only on the right side of the road. The "rules of the road" prescribed by our statute have no application to a road which is under construction. In Myers v. Sanders, 189 Miss. 198, 194

So. 300, 302, this Court held that when a road is under construction and the contractor is under obligation to permit local traffic thereon, as in this case, the act of the contractor in obstructing any portion of the roadway "was not a negligent (act) but a reasonable exercise of his right to carry on the work to completion, since he left a sufficient clearance for the local traffic and for others to pass in safety when exercising the vigilant caution and constant lookout required of them in traveling over a highway known to be under construction." It should be noted, in passing, that in that case the jury found a verdict for the plaintiff and this Court without hesitation reversed the judgment entered thereon and rendered a judgment here for the defendant for the reason that it was held as a matter of law that the contractor was guilty of no negligence in obstructing a portion of the highway then under construction.

In my view the authorities cited in the controlling opinion are not applicable to the situation here presented. For instance, in Gulf Refining Company v. Ferrell, supra, the master directed his employee to squat upon the traveled portion of a busy city street which carried a large amount of traffic and to paint a "No Parking" sign upon the pavement under a promise that the master would provide a watchman to prevent injury to the employee while doing this work. The master failed to provide the watchman and the employee was struck and injured by a passing motorist. There the city street was open to all traffic which was constantly passing in both directions and the employee was required to work out in the line of traffic where he was in danger from every passing vehicle. If that had been the situation presented in this case I would readily agree that the master owed the duty of providing a watchman to protect his employee, but the employee here was not working in the highway but completely outside the traveled portion and upon the shoulder of the road at a place which was entirely safe from danger

at the hands of any passing motorist in the exercise of one iota of care.

Billups Petroleum Company v. Entrekin, 209 Miss. 302, 46 So. (2d) 781, cited in the controlling opinion is likewise not in point. There the master operated a filling station by the side of a paved highway. The approaches to this filling station were surfaced with loose gravel placed there by the master. Customers entering and leaving the station were constantly knocking this loose gravel onto the paved portion of the traveled highway which had the effect of ball bearings under the wheels of passing traffic and a passing motorist was caused to skid from the pavement by reason of the condition which the master had created and to strike the employee while engaged at his work in servicing a car which was parked at the filling station. It was held in that case that the master was negligent in failing to keep the gravel swept from the paved portion of the highway, and that he should have reasonably foreseen that some such accident might occur because of his negligence.

In United Novelty Company v. Daniels, Miss., 42 So. (2d) 395, 396, cited in the controlling opinion, the master placed a servant on a cold day in a closed room measuring eight by ten feet where a gas heater was burning with an open flame and required this youthful and inexperienced servant to use gasoline in cleaning the working parts of a music machine commonly known as a ''juke box.'' A rat ran from its hiding place in the ''juke box'' to a point underneath the burning gas heater where its gasoline impregnated coat of hair caught fire and it then ran back to its original hideout where a violent explosion occurred. The Court there pointed out that the presence of the rat was a mere incident ''and serves chiefly to ratify the conclusion that the room was permeated with gasoline vapors'' which the Court held was a danger against which the master should have warned and guarded his servant.

In Coast Ship Company v. Yeager, 120 Miss. 152, 81 So. 797, cited in the controlling opinion, the master placed one of his servants on the inside of the hull of a ship under construction and at the same time had other employees on the outside boring trunnel holes through the ship which was about three feet in thickness. This boring was done with augers driven by air compression. The servant inside the ship could not hear these augers at work because of the great amount of noise incident to the work of the carpenters on the inside. One of the augers drilled through the hold of the ship and struck the plaintiff's foot and bored a hole completely through it before he could extricate himself. There was a crew of men boring these holes from the outside and it was shown that this same kind of injury had been previously inflicted upon an employee at work on the inside, and it was held that the master was guilty of negligence in not providing his employees in the ship with some kind of warning as to where the outside workers were engaged in boring the holes. In the case at bar no similar injury had ever before been inflicted upon an employee in a period of seventeen years of this type of work, and the principle on which the Yeager case was decided clearly has no application here.

The controlling opinion next cites Russell v. Williams, 168 Miss. 181, 150 So. 528, 151 So. 372, and says that it is more in point than the above mentioned authorities. In that case the master required a servant to ride on the running board of a truck upon a busy street in the City of Hattiesburg, a place of known danger, and in turning across the street to the left the driver failed to give a signal for a left turn and the employee on the running board was injured by a motorist who was passing the truck on the paved and traveled portion of the street which was open to all kinds of traffic and was not under construction. That decision turned upon the point that the master was guilty of negligence in requiring his servant to ride in a place of known danger and bears no

reasonable resemblance to the facts presented by the record here.

The case of Priestly v. Hays, 147 Miss. 843, 112 So. 788, cited in the controlling opinion, is based upon an act in an emergency whereunder it was held that the "rules of the road" are not always applicable even on a completed city street which is open to all kinds of traffic. I think it has been conclusively shown hereinabove that the "rules of the road" have no application to a highway under construction, but if any further authority be needed on this proposition it may be found in the cases of Czarnetzky v. Booth, 210 Wis. 536, 246 N. W. 574, and Parrish v. Smith, 102 Colo. 250, 78 P. (2d) 629.

Next cited in the controlling opinion is McLemore & McArthur v. Rogers, 169 Miss. 650, 152 So. 883. In that case the servant was required to stand on the ground and hold a guy line to prevent a steel beam from coming in contact with the wall upon its ascent while the building was under construction and the master negligently failed to protect the servant from the splashing of concrete at the top of the wall, as a result of which the servant was injured. It was there pointed out that the hazard to which the servant was subjected was one against which he could not protect himself and at the same time do his work and it was held that the master was negligent in exposing the servant to such a known hazard, but that case is a far cry from the facts presented by the record now before us.

The controlling opinion next cites Alabama and Vicksburg Railway Company v. Graham, 171 Miss. 695, 157 So. 241, wherein the railroad company was held not to have exercised ordinary care to maintain an overhead bridge with reasonably safe guardrails. The controlling opinion says that the "guard rails were constructed in accordance with the plans and specifications of the State Highway Department." An examination of the opinion, however, shows that the guardrails were constructed in accordance with standards in effect in 1921, but "that

since 1921 the standards and requirements for wheel guards and guard rails have been materially raised by the State Highway Department, and that since 1931, this standard requires a wheel guard constructed of timbers 6″ x 8″ running the entire length of the bridge, resting on blocks 4″ x 6″ x 1′ placed on the floor of the bridge at 3½-foot intervals, with another 6″ x 6″ timber on top of the 6″ x 8″, all securely bolted through the stringers of the bridge, making a wheel guard, after dressing, of 15″ instead of 6″ as originally required". [171 Miss. 695, 157 So. 243.] It was further shown that the 1921 standard "did not afford sufficient protection to the traveling public", but, notwithstanding this, the railroad company did nothing to make the wheel guards reasonably safe and as a result thereof an automobile, caught in an emergency, plunged over the inadequate wheel guard and fell over twenty feet to the ground below. Under these facts this Court held that there was a question for the jury to determine whether the railroad company had exercised reasonable care for the protection of the traveling public. Certainly no such case is presented by the record here.

The controlling opinion quotes finally from Supreme Instruments Corp. v. Lehr, 190 Miss. 600, 199 So. 294, 1 So. (2d) 242, 246, but the quotation stops too soon. It should have continued on and included the following language of the Court which is here quite appropriate: " 'Courts will not be presumed to be visionless  *  *  *. Theory should not outweigh practice and experience, and evidence which contests and contradicts the evidence of the senses must be received with caution.' State, ex rel. [St. Louis Transfer Co.] v. Clifford, 228 Mo. 194, 128 S. W. 755, 758, 21 Ann. Cas. 1218. As stated in Hercules Powder Company v. Calcote, 161 Miss. 860, 138 So. 583, 584, 'the case arouses a sympathetic interest, but we think there is no proved liability as against the appellant here.' Although completely aware of the duty of this Court to repel any invasion into the realm of the trial jury (Williams Yellow Pine Company v. Henley,

155 Miss. 893, 125 So. 552; Brown v. State, 153 Miss. 737, 121 So. 297), and that 'it must be a rare case of negligence which the court should take from a jury' (Bell v. [South ern] Railway Company, 87 Miss. 234, 30 So. 821), we must recognize the reciprocal duty of the Court to guard against any misapplication of substantive principles in those cases where the admitted facts do not justify their invocation. The peremptory instruction requested by the defendant ought to have been given.''

It was stated in the above case that ''Theory should not outweigh practice and experience,'' and yet in the case at bar seventeen years of experience and practice in the identical work which appellee was doing have failed to disclose a single instance of injury to an employee. Instead of basing its decision upon experience and practice the controlling opinion has gone into the realm of pure theory. Decisions should be based upon the standard of care which experience has shown to be reasonably safe.

In Brown v. Coley, 168 Miss. 778, 783, 152 So. 61, 62, this Court quoted from Seifferman v. Leach, 161 Miss. 853, 858, 138 So. 563, 564, where it was said: ''The ground of liability in respect to unsafe places to work is not danger, but negligence. The rule is one of reason. There are many places in and around machinery which are dangerous and cannot be made otherwise. Those who work there, work in unsafe places, but this does not make the master liable as for furnishing an unsafe place * * * to work.'' The Court then said in Brown v. Coley: ''The true rule in the respects mentioned is that when the master has taken reasonable care to furnish a reasonably suitable and safe location for the doing of the particular work and has there installed the ordinary and generally approved equipment, suitable and proper for the place and for the work of the kind there being done and this equipment is in adequate repair and he has furnished the appliances easily to be used in connection therewith which when used will render the operation as safe as

may reasonably be done, considering the nature of the work and the character of the machinery appropriate thereto, the master has performed his duty, in so far as concerns the doctrine of a safe place to work and of safe appliances with which to work, although there still be danger in the work.''

In Hammontree v. Cobb Construction Company, 168 Miss. 844, 854, 152 So. 279, 282, a case similar in many respects to the case at bar, this Court said: ''The work there did not require any such concentration of effort or attention or place them in such a position at any time that each of them was not reasonably able to take care of himself, and hence cases such as Gulf Refining Company v. Ferrell, 165 Miss. 296, 147 So. 476, do not come into play. It must be a case of extra hazard and where, by the very nature of their work and of the situation in which they are placed, the workers cannot reasonably and fully take care of themselves, that in respect to open and obvious dangers an industry or work is to be loaded with the expense and incumbrance of numerous watchmen, or even with any watchman at all. It is not to be permitted that the law in its endeavor to exact reasonable care on the part of the master shall itself be unreasonable or go to unreasonable extremes. All work around machinery is dangerous; it will always be so, and particularly where, as in road work, the place constantly shifts over changing and difficult grounds. The test is not danger but negligence, and negligence is the failure to take such reasonable care as is taken or should be taken by experienced and prudent men. The master, as it seems to us, had taken that care here and there is, therefore, no liability for the unfortunate injury.''

In Mauney v. Gulf Refining Company, 193 Miss. 421, 427-430, 8 So. (2d) 249, 9 So. (2d) 780, this Court announced the following rules and principles which I feel are quite applicable to the case at bar:

The rule is firmly established in this state, as in nearly all the common law states, that in order that a person who

does a particular act which results in injury to another shall be liable therefor, the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom, D'Antoni v. Albritton, 156 Miss. 758, 766, 126 So. 836; Williams v. Lumpkin, 169 Miss. 146, 152, 152 So. 842; but that the actor is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities. Illinois Cent. R. Co. v. Bloodworth, 166 Miss. 602, 617, 145 So. 333; Burnside v. Gulf Refining Co., 166 Miss. 460, 470, 148 So. 219; Shuptrine v. Herron, 182 Miss. 315, 180 So. 620. This rule is affirmed in one way or another in cases which will run into the hundreds in this state. * * *

"In such a situation, as indeed in most situations, the principles of the common law must be kept within practicable bounds and so as not to occupy an attitude which would place it over and above the heads of those who must carry on the every day affairs of life. Hence, the law must say, as it does, that 'care or foresight as to the probable effect of an act is not to be weighed on jewelers' scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations', Illinois Cent. R. Co. v. Bloodworth, supra, 166 Miss., page 618, 145 So. page 336; and that it would impose too heavy a responsibility for negligence to hold the tort feasor accountable for what was unusual and unlikely to happen, or for what was only remotely and slightly probable. 38 Am. Jur., p. 713, § 61. As said by this Court in Meridian Grain, etc., Co. v. Jones, 176 Miss. 764, 776, 169 So. 771, 772, quoting Pollock on Torts, 9th Ed., p. 41: 'A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture by conceived as possible, human affairs could not be carried on at all. The reasonable

man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible.' "

It must be admitted in the case at bar that the act of Mrs. Majors in ignoring the 14 or 15 feet of open pavement and in recklessly and wantonly driving her car off onto the shoulder of the road was an unusual, improbable and extraordinary occurrence which had never happened before and against which no sort of human ingenuity and foresight could have protected a workman on the shoulder of the road. It was an act wholly in the range of a bare possibility but certainly not within the range of reasonable foreseeability. In my judgment the sole proximate cause of appellee's injury was the gross and almost criminal negligence of Mrs. Majors, which Bob Lancaster could not have reasonably foreseen and for which his insurer should not be held liable in damages. I think the peremptory instruction requested by him should have been granted.

**McGehee, C. J.,** and **Holmes** and **Arrington, JJ.,** join in this dissent.